**In re Mary Barbara LAWSON, Debtor.**

**Bankruptcy No. 83–00198.**

United States Bankruptcy Court,
E.D. Kentucky,
Frankfort.

Aug. 16, 1984.

Billy Todd Cheshire, Frankfort, Ky., for debtor.

Robert W. Kellerman, Johnson & Judy, Stoll, Keenon & Park, Frankfort, Ky., for Credithrift of America, Inc.

William M. Brown, Jr., Versailles, Ky., trustee.

## MEMORANDUM OPINION

JOE LEE, Bankruptcy Judge.

This case is pending on the motion of the debtor, by counsel, pursuant to 11 U.S.C. § 522(f), to avoid the lien of Credithrift of America on household furnishings of the debtor as a lien that impairs the exemption of the debtor in such property.

FINDINGS OF FACT:

It appears from the proof of claim filed in the record in behalf of Credithrift of America that said creditor is claiming a nonpossessory, nonpurchase-money security interest in household furnishings of the debtor described as "1 Waterbed, 2 Nite Stands, 2 Chest of Drawers, 1 Small Chest, 2 Big Chests" based on a note and security agreement dated December 13, 1982. The security interest of said creditor in such property is perfected by a financing statement filed of record in the Franklin County Court Clerk's Office on December 16, 1982.

The debtor has properly claimed an exemption in said property under KRS 427.-010, and there is no controversy with respect to the debtor's entitlement thereto, other than the controversy between the debtor and Credithrift of America over the right of the debtor to avoid Credithrift's lien on said property.

ADDITIONAL FINDINGS OF FACT:

In 1980 the Kentucky General Assembly enacted legislation upgrading the Kentucky exemption laws and, as permitted by 11 U.S.C. § 522(b)(1), denied to individual debtors domiciled in Kentucky who seek relief in bankruptcy the exemptions specified in section 522(d) of the Bankruptcy Code, 11 U.S.C. § 522(d). This legislation, insofar as here material, is now codified in Chapter 427 of the Kentucky Revised Statutes entitled "Exemptions" as follows:

427.010 Exempt personal property and disposable earnings of individual debtors

(1) The following personal property of an individual debtor resident in this state is exempt from execution, attachment, garnishment, distress or fee-bill: All household furnishings, jewelry, personal clothing and ornaments not to exceed $3,000 in value; tools, equipment and livestock, including poultry, of a person engaged in farming, not exceeding $3,000 in value; one motor vehicle and its necessary accessories, including one spare tire, not exceeding in the aggregate $2,500 in value; professionally prescribed health aids for the debtor, or a dependent of the debtor.

. . . . .

427.170 Federal bankruptcy code exemptions not to apply in Kentucky

An individual debtor domiciled in this state is not authorized to exempt from property of said debtor's estate the property specified under subsection (d) of section 522 of The Bankruptcy Code of 1978, 92 Stat. 2549 (1978), Public Law 95–598.

At its 1982 regular session the Kentucky General Assembly enacted House Bill 731. This bill, which was signed into law by the Governor on April 2, 1982, and which became effective July 15, 1982, added a new paragraph (4) to KRS 427.010 as follows:

AN ACT relating to bankruptcy.

*Be it enacted by the General Assembly of the Commonwealth of Kentucky:*

Section 1. KRS 427.010 is amended to read as follows:

(1) The following personal property of an individual debtor resident in this state is exempt from execution, attachment, garnishment, distress or fee-bill: All household furnishings, jewelry, personal clothing and ornaments not to exceed three thousand dollars ($3,000) in value; tools, equipment and livestock, including poultry, of a person engaged in farming, not exceeding three thousand dollars ($3,000) in value; one (1) motor vehicle and its necessary accessories, including one (1) spare tire, not exceeding in the aggregate two thousand five hundred dollars ($2,500) in value; professionally prescribed health aids for the debtor, or a dependent of the debtor.

. . . . .

*(4) Notwithstanding any other provision of law, no property upon which a debtor has voluntarily granted a lien shall, to the extent of the balance due on the debt secured thereby, be subject to the provisions of this chapter or be exempt from forced sale under process of law.*

1982 Ky.Rev.Stat. & R.Serv. 997–98 (Baldwin).

It will be noted the bill adding the underlined language to KRS 427.010 recites that the legislation is "AN ACT relating to bankruptcy."

We juxtapose the applicable provisions of 11 U.S.C. § 522(f) and paragraph (4) of KRS 427.010 to emphasize the conflict between Federal and State law.

| Federal 11 U.S.C. § 522(f) | State KRS 427.010(4) |
|---|---|
| Notwithstanding waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is— | Notwithstanding any other provision of law, no property upon which the debtor has voluntarily granted a lien shall, to the extent of the balance due on the debt secured thereby, be subject to the provisions of this chapter or be exempt from forced sale under process of law. |

. . . .

(2) A nonpossessory, non-purchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for personal, family, or household use of a debtor or a dependent of a debtor;

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(C) professionally prescribed health aids for the debtor or a dependent of the debtor.

 The court takes judicial notice of the fact that paragraph (4) of KRS 427.010 has the same operative effect as a contractual waiver of exemption provision in a security agreement. Under Kentucky law the household furnishings and personal effects of an individual debtor are exempt to the extent of $3,000 in value until the instant the debtor signs a security agreement voluntarily granting a lien on such property. Upon the signing of such a security agreement the exemption is extinguished to the extent of the balance due on the debt secured by such household furnishings and personal effects. Consequently, the Kentucky statute also operates as a waiver of a debtor's power under 11 U.S.C. § 522(f) to avoid a transfer that impairs an exemption of the debtor in household furnishings, tools of the trade and health aids. Unlike

Federal law, the Kentucky statute makes no distinction between purchase-money and nonpurchase-money liens.

CONCLUSIONS OF LAW:

The question presented is whether this court should enforce or invalidate paragraph (4) of KRS 427.010. This statute withholds from a debtor who has voluntarily granted a lien thereon an exemption in household furnishings, tools of the trade, and health aids that is otherwise available to debtors generally. One obvious purpose and effect of the statute is to defeat a debtor's right under 11 U.S.C. § 522(f)(2) to avoid a nonpossessory, nonpurchase-money lien that encumbers an exemption of the debtor in such property. The court is of the opinion the Kentucky statute in question is invalid under the Supremacy Clause of the Constitution of the United States. U.S. Const. art. VI, cl. 2.

The court has found as a fact that KRS 427.010(4) effectuates a waiver of a debtor's power under section 522(f) to avoid a nonpossessory, nonpurchase-money lien that impairs an exemption of the debtor in household furnishings, tools of the trade and health aids.

Section 522(e) of the Bankruptcy Code, 11 U.S.C. § 522(e), provides "[a] waiver by the debtor of a power under subsection (f) ... of this section to avoid a transfer ... is unenforceable in a case under this title." Section 522(e) makes no distinction between a contractual and a statutory waiver of such power by a debtor. In this instance the Kentucky statute does not become operative until a security agreement is voluntarily executed by the debtor, whereupon the statute becomes part of the agreement and results in an unenforceable waiver.

The effect of section 522(e) of the Bankruptcy Code was not addressed by the Sixth Circuit in *In re Pine*, 717 F.2d 281 (6th Cir.1983). Consequently, the decision in that case is not controlling in this case. Nevertheless some comment on that case seems appropriate.

In *Pine* the court reasoned that the lien avoidance provisions of section 522(f) are applicable only with respect to the debtor's "interest" or "equity interest" in property on the date of bankruptcy and consequently are unavailable when a state statute denies the debtor an exemption in encumbered property. This reasoning overlooks the fact that section 522(d)(3) of the Bankruptcy Code, 11 U.S.C. § 522(d)(3), provides an exemption only for the debtor's "interest" in household furnishings, household goods, etc. The rationale adopted by the Sixth Circuit in *Pine* would render the lien avoidance provisions of section 522(f) meaningless even in those few states where the exemptions provided for by section 522(d) remain available to debtors.

This rather obvious fact was recognized by the Eleventh Circuit Court of Appeals in *In re Maddox*, 713 F.2d 1526 (11th Cir. 1983), decided two days after the decision of the Sixth Circuit in the *Pine* case. The court in the *Maddox* case, in construing the identical Georgia statute involved in the *Pine* case, upheld the right of a debtor claiming exemptions under Georgia law to avoid a nonpossessory, nonpurchase-money lien on household goods. The court in *Maddox* characterized as absurd the rationale adopted by the Sixth Circuit that sections 522(b)(2)(A) and 522(f) of the Bankruptcy Code in combination permit a debtor to avoid a nonpossessory, nonpurchase-money lien on exempt property only to the extent the property in question is free of such a lien.

The Sixth Circuit arrived at the foregoing result in *Pine* by concluding that the word "property" as used in section 522(b)(2)(A) of the Bankruptcy Code does not mean property in the layman's sense but rather denotes only legal interests in property because "the Act throughout characterizes property in terms of various security and other interests." With due respect to the Sixth Circuit, the statement in the quoted language is simply contrary to fact.

Section 541 of the Bankruptcy Code defines property of the estate to include "all legal or equitable interests of the debtor in

property as of the commencement of the case." 11 U.S.C. § 541. Section 522(b) of the Code begins with a cross reference to section 541 and provides as follows:

§ 522. Exemptions

(a) . . .

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from *property* of the estate either—

(1) *property* that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative,

(2)(A) any *property* that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place;

. . . .

11 U.S.C. § 522.

We have underlined the word "property" each time it appears in this section. Obviously, the first time it appears it is used in the same sense as it is used in section 541 and includes equitable as well as legal interests of the debtor in property. Apparently the court in *Pine* would concede that the word "property" as used in section 522(b)(1) encompasses equitable interests of the debtor; otherwise, as previously noted, the lien avoidance provisions of section 522(f) of the Code would be unavailable to debtors even in those states that have not enacted opt-out legislation. Why the word "property" as used in section 522(b)(2)(A) should be interpreted to exclude the debtor's equitable interest in property is a mystery.

The restrictive meaning which the Sixth Circuit has attached to the word "property" as used in section 522(b)(2)(A) of the Bankruptcy Code operates to transpose the language of that section from language that ostensibly permits a debtor to claim

exemptions under State law to language that denies a debtor many of the exemptions that would otherwise be available under State law. For example, under Kentucky law (KRS 427.060) a debtor may claim a homestead exemption in the debtor's aggregate interest, not to exceed $5,000 in value, in real or personal property that such debtor or a dependent of the debtor uses as a permanent residence in this State, or in a burial plot for such debtor or a dependent of such a debtor. Under the Kentucky statute a debtor may claim a homestead exemption in real property the debtor is purchasing under a land contract, in a mobile home the debtor is purchasing under an installment contract, or in a burial plot the debtor is purchasing under an installment contract. Ordinarily the debtor will not receive title to such real or personal property until the purchase price is paid. Consequently, the debtor's interest in such property is "equitable" rather than "legal" in nature. If section 522(b)(2)(A) in fact restricts the exemptions which a debtor may claim under State law to property in which the debtor has a "legal" interest, then the exemptions available to a debtor under State law in nonbankruptcy proceedings are more liberal than those available to a debtor who seeks relief in bankruptcy. The Congressional objective of permitting States to fix the exemptions a debtor may claim in bankruptcy proceedings is frustrated rather than furthered.

The limitation the Sixth Circuit has placed on section 522(f) of the Bankruptcy Code is not supported by legislative history. This can be illustrated by quoting the applicable provisions of the separate bankruptcy reform bills passed by House and Senate in the 95th Congress.

Section 522 of H.R. 8200 as passed by the House on February 1, 1978 provided as follows:

(a) . . .

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate either—

(1) property that is specified under subsection (d) of this section; or, in the alternative,

(2)(A) any property that is exempt under Federal, State, or local law, other than subsection (d) of this section, that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place; and

. . . .

(c) . . . .

(d) The following property may be exempted under subsection (b)(1) of this section:

. . . .

(3) The debtor's interest, not to exceed $300 in value in any particular item, in household furnishings, household goods, wearing apparel, appliances, books, animals, crops, or musical instruments, that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor.

. . . .

(6) The debtor's aggregate interest, not to exceed $1,000 in value, in any implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor.

. . . .

(9) Professionally prescribed health aids for the debtor or a dependent of the debtor.

. . . .

(e) A waiver of exemptions executed in favor of a creditor that holds an unsecured claim against the debtor is unenforceable in a case under this title with respect to such claim against property that the debtor may exempt under subsection (b) of this section. A waiver by the debtor of a power under subsection (f) or (h) of this section to avoid a transfer, under subsection (g) or (i) of this section to exempt property, or under sub-

section (i) of this section to recover property or to preserve a transfer, is unenforceable in a case under this title.

(f) The debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor, notwithstanding any waiver of exemptions, would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien; or

(2) a nonpurchase-money security interest in any

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(C) professionally prescribed health aids for the debtor or a dependent of the debtor.

H.R. 8200, 95th Cong., 1st Sess. § 522 (1977), *reprinted in* 9 Bkr.—L.Ed., Legislative History ch. 82, Appendix: H.R. 8200 at 586–92 (1979), *and in* 3 App. Collier on Bankruptcy III—394–400 (15th ed. 1984).

On July 12, 1978, the Senate Committee on the Judiciary reported S. 2266, the Senate version of the Bankruptcy Reform Act of 1978. On September 7, 1978, the Senate took from the desk H.R. 8200, the House version of the Bankruptcy Reform Act of 1978, struck the text of the bill and inserted in its place the text of S. 2266 and passed the bill as amended. See 124 Congr.Rec. S14,745 (daily ed. Sept. 7, 1978), *reprinted in* 3 App. Collier on Bankruptcy VIII—21 (15th ed. 1984).

The applicable provisions of the Senate bill were as follows:

§ 522. Exemptions

(a) . . .

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate:

(1) any property that is exempt under Federal, State, or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place; and

(2) . . .

(c) . . .

(d) A waiver of exemptions executed in favor of a creditor that holds an unsecured claim against the debtor is unenforceable in a case under this title with respect to such claim against property that the debtor may exempt under subsection (b) of this section. A waiver by the debtor of the power under subsection (e) or (g) of this section to avoid a transfer under subsection (f) or (h) of this section to exempt property, or under section (h) to recover property or to preserve a transfer is unenforceable.

(e) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien; or

(2) a nonpossessory nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(C) professionally prescribed health aids for the debtor or a dependent of the debtor.

S. 2266, 95th Cong., 2d Sess. § 522 (1978), *reprinted in* 9 Bkr.-L.Ed., Legislative History ch. 83, Appendix: S. 2266 at 424–27 (1979), *and in* 3 App. Collier on Bankruptcy VII—408–11 (15th ed. 1984).

The report accompanying S. 2266 explains section 522 of the Senate bill as follows:

Subsection (b) tracks current law. It permits a debtor the exemptions to which he is entitled under other Federal law and the law of the State of his domicile. . . .

Under proposed section 541, all property of the debtor becomes property of the estate but the debtor is permitted to exempt certain property from property of the estate under this section. *Property may be exempted even if it is subject to a lien,* but only the unencumbered portion of the property is to be counted in computing the value of the property for purposes of the exemption. (Emphasis added).

. . . .

Subsection (d) protects the debtor's exemptions, either Federal or State, by making unenforceable in a bankruptcy case a waiver of exemptions or a waiver of the debtor's avoiding powers under the following subsections.

Subsection (e) protects the debtor's exemptions, his discharge, and thus his fresh start by permitting him to avoid certain liens on exempt property. The debtor may avoid a judicial lien on any property to the extent that the property could have been exempted in the absence of the lien, and may similarly avoid a nonpurchase-money security interest in certain household and personal goods. The avoiding power is independent of any waiver of exemptions.

S.Rep. No. 989, 95th Cong., 2d Sess. 75–76 (1978), *reprinted in* 9 Bkr.-L.Ed., Legislative History § 83:7 at 97–98 (1979), *and in* 3 App. Collier on Bankruptcy V—75–76 (15th ed. 1984), U.S.Code Cong. & Admin. News 1978, 5787, 5861, 5862.

It is apparent that both the House and Senate versions of the Bankruptcy Reform

Act of 1978 permitted a debtor to avoid a nonpurchase-money security interest that encumbered the debtor's exemption in household furnishings and household goods without regard to whether the exemptions were to be claimed under Federal law or under State law.

In the period between September 7 and September 28, 1978, the managers of the House and Senate bills met to iron out a multitude of differences between the two bills. See Cong.Rec. Sept. 28, 1978, at H11,089.

The results of these meetings with respect to the issue at hand is summarized in legislative history as follows:

> Section 522 of the House amendment represents a compromise on the issue of exemptions between the position taken in the House bill, and that taken in the Senate amendment. Dollar amounts specified in section 522(d) of the House bill have been reduced from amounts as contained in H.R. 8200 as passed by the House. The States may, by passing a law, determine whether the Federal exemptions will apply as an alternative to State exemptions in bankruptcy cases.
>
> . . . .
>
> Section 522(f)(2) is derived from the Senate amendment restricting the debtor to avoidance of *nonpossessory*, nonpurchase-money security interests. (Emphasis added).

See 124 Cong.Rec. H11,095 (daily ed. Sept. 28, 1978), *reprinted in* 9 Bkr.-L.Ed., Legislative History § 81:3 at 30 (1979), *and in* 3 App. Collier on Bankruptcy IX—99–100; X—25 (15th ed. 1984).

Thus, legislative history indicates the managers of this legislation in fact considered the lien avoidance provisions of the two bills and adopted the Senate version which was slightly more restrictive in application. The House bill permitted avoidance of a "nonpurchase-money security interest in" household furnishings, etc. The Senate bill permitted avoidance of a "*nonpossessory* nonpurchase-money security interest in" such property. (Emphasis added). The managers of the House bill concurred in the addition of the word "nonpossessory" appearing in the Senate bill.

There is not even the slightest hint in legislative history of an intention on the part of Congress to permit States to undercut the lien avoidance provisions of section 522(f) of the Bankruptcy Code in conjunction with opt-out legislation restricting debtors seeking relief in bankruptcy to exemptions provided by State law. The Senate bill, which restricted debtors to the exemptions provided by State law, contained the exact lien avoidance provision that appears in present law. The language of the House and Senate reports explaining this provision is substantially identical. Both reports say "property may be exempted even if it is subject to a lien. . . ." and that the debtor may avoid a nonpurchase-money lien on certain household goods that could have been exempted in the absence of the lien. Unlike the court in the *Pine* case, this court is unable to find any inconsistency whatsoever between the legislative history and the plain language of sections 522(b)(2)(A) and 522(f) of the Bankruptcy Code.

In any event, in *Pine* the Sixth Circuit apparently over-looked the effect of section 522(e) of the Bankruptcy Code which renders unenforceable in a bankruptcy case a waiver by the debtor of such debtor's power to avoid a nonpossessory, nonpurchase-money lien under section 522(f) of the Bankruptcy Code. KRS 427.010(4) in purpose and effect accomplishes such a waiver and therefore is unenforceable in a case under title 11 of the United States Code. U.S. Const. art. VI, cl. 2.

Actually, as is quite evident when one delves into the matter, Congress viewed the taking of a nonpossessory, nonpurchase-money security interest in household goods, tools of the trade and health aids as an unfair credit practice that should be discouraged. Consequently, it is unlikely Congress intended to permit the States to override Federal policy and encourage a practice that Congress intended to restrict. The following history is relevant.

By Title IV of the Consumer Credit Protection Act of 1968, Pub.L. No. 90–321, 82 Stat. 163 (effective May 29, 1968), Congress established the National Commission on Consumer Finance to study the field of consumer credit. In a report entitled *Consumer Credit in the United States*, submitted to Congress in 1972, The National Commission on Consumer Finance recommended that a creditor not be allowed to take other than a purchase-money security interest in household goods. *Consumer Credit in the United States, Report of the National Commission on Consumer Finance (December 1972)* at xvi. It was the view of the Commission that in the event of default a nonpurchase-money security interest in household goods and the accompanying right to repossess or threat to repossess such goods has far too disruptive an impact on the family life of the debtor to be in the public interest. *Id.* at 27. This recommendation of The National Commission of Consumer Finance was adopted and codified by The Commission on Bankruptcy Laws of the United States in its subsequent report to Congress in 1973. *Report of the Commission on Bankruptcy Laws of the United States, July 1973, Part I*, at 169–70, and Part II, at 126–30. The Bankruptcy Commission recommended that a waiver of exemptions be unenforceable by a creditor that does not have security in the property, that judicial liens not be enforceable against exempt property, and that nonpurchase-money security interests be unenforceable as to wearing apparel, household goods, and health aids. *Id.* The applicable provisions of the Bankruptcy Commission Bill invalidating such liens on protected exempt property were self-executing in that such liens were rendered unenforceable as a matter of law. *Id.*, Part II, at 126, 130; H.R. 10792, 93rd Cong., 1st Sess. § 4–503(f). However, the final version of the Bankruptcy Code as enacted by Congress requires affirmative action by an individual debtor pursuant to section 522(f) of the Bankruptcy Code to avoid liens on selected categories of exempt property.

The House Report accompanying the Bankruptcy Reform Act contains the following explanation for inclusion of section 522(f) in the Bankruptcy Code:

In addition, the bill gives the debtor certain rights not available under current law with respect to exempt property. The debtor may void any judicial lien on exempt property, and any nonpurchase money security interest in certain exempt property such as household goods. The first right allows the debtor to undo the actions of creditors that bring legal action against the debtor shortly before bankruptcy. Bankruptcy exists to provide relief for an overburdened debtor. If a creditor beats the debtor into court, the debtor is nevertheless entitled to his exemptions. The second right will be of more significance for the average consumer debtor. Frequently, creditors lending money to a consumer debtor take a security interest in all of the debtor's belongings, and obtain a waiver by the debtor of his exemptions. In most of these cases, the debtor is unaware of the consequences of the forms he signs. The creditor's experience provides him with a substantial advantage. If the debtor encounters financial difficulty, creditors often use threats of repossession of all of the debtor's household goods as a means of obtaining payment.

In fact, were the creditor to carry through on his threat and foreclose on the property, he would receive little, for household goods have little resale value. They are far more valuable to the creditor in the debtor's hands, for they provide a credible basis for the threat, because the replacement costs of the goods are generally high. Thus, creditors rarely repossess, and debtors, ignorant of the creditors' true intentions, are coerced into payments they simply cannot afford to make.

The exemption provision allows the debtor, after bankruptcy has been filed, and creditor collection techniques have been stayed, to undo the consequences of a contract of adhesion, signed in ignorance, by permitting the invalidation of nonpurchase money security interests in

household goods. Such security interests have too often been used by overreaching creditors. The bill eliminates any unfair advantage creditors have.

*Bankruptcy Law Revision, Report of the Committee on the Judiciary,* H.R.Rep. No. 595, 95th Cong., 1st Sess. 126–27 (1977), *reprinted in* 9 Bkr.-L.Ed., Legislative History § 82:4 at 103–04 (1979), *and in* 2 App. Collier on Bankruptcy II—126–27 (15th ed. 1984), U.S.Code Cong. & Admin. News 1978, 6087, 6088.

The Uniform Exemptions Act, drafted by the National Conference of Commissioners on Uniform State Laws, approved in 1976 and recommended for enactment in all states, would preclude enforcement of a nonpossessory, nonpurchase-money security interest in furnishings and appliances reasonably necessary for one household, as well as certain other property. See section 11, Uniform Exemptions Act. The comment to section 11 states that restrictions on enforceability of nonpurchase-money security interests in household goods were recommended by The National Commission on Consumer Finance, as previously discussed in this memorandum. The comment also cites FTC's proposed Trade Regulation Rules on Credit Practices § 444.2(a)(4) [1] and FRB's proposed Rules on Uniform Credit Practices § 228.2(a)(4) [2]. These proposed regulations of the Federal Trade Commission and Federal Reserve Board were based on the conclusion that the taking of a nonpossessory, nonpurchase-money security interest in household goods should be defined as an unfair trade practice.

The Report of the Presiding Officer following hearings by the Federal Trade Commission on its proposed regulation states:

The real purpose of taking a security interest in such property is simply to obtain a device to terrorize consumers or to harass them until payments are made on the loans. Even if such goods are repossessed, the costs of pick-up, storage, and sale would probably exceed the amount of the proceeds.

Threats to repossess household goods have several effects. They may force the consumer to borrow from another source, perhaps giving security interests in other property, to refinance the obligation with the original creditor with attendant costs, or to obtain a consolidation loan for a much greater amount. In each of these cases the consumer is falling more deeply into debt and is making it unlikely that the family's financial affairs can be put in order without resort to bankruptcy.

Since the usual causes of default are for reasons beyond the control of the consumer, *e.g.,* loss of job, abandonment by spouse, and illness, the threat to repossess household goods causes great emotional suffering, humiliation, anxiety, and deep feelings of guilt; and this distress can lead to physical breakdowns or illness, disruption of the family, and undue strain on the family relationships.

Evidence that the actual value of the household goods included in a blanket security clause is of no particular importance is provided by the fact that creditors do not ordinarily inspect, inventory, or appraise them. Moreover, little effort is made to determine the existence of prior claims or grants of security interest in the property even though the duplication of liens would be evident from statements of the prospective borrower or from records in the appropriate clerk's office.

*Report of the Presiding Officer on Proposed Trade Regulation Rule: Credit Practices,* 16 C.F.R. Part 444; Public Record 215–42, August, 1978, 136–37.

It should be noted that on March 1, 1984 the Federal Trade Commission issued a fi-

---

**1.** 40 Fed.Reg. 16,347 (1975) (to be codified at 16 C.F.R. pt. 444) (proposed April 11, 1975). *See also Hearings before the Subcommittee on Civil and Constitutional Rights of the House Committee on the Judiciary,* part 2, 94th Cong., 1st and

2d Sess. 757–66 (1976) (statement of David H. Williams).

**2.** 40 Fed.Reg. 19,495 (1975) (to be codified at 12 C.F.R. pt. 228) (proposed May 5, 1975).

nal rule defining the taking of "a nonpossessory security interest in household goods other than a purchase money security interest" to be an unfair act or practice within the meaning of Section 5 of the Federal Trade Commission Act. This regulation becomes effective March 1, 1985. See 49 Fed.Reg. 7740, at 7761–68; 7789–90 (March 1, 1984) (to be codified at 16 C.F.R. Part 444).

Thus a practice which Congress intended to discourage by adoption of section 522(f) of the Bankruptcy Code will become a prohibited practice on March 1, 1985.

The suggestion that Congress has permitted the several States to override Federal policy in this matter must be rejected.

Finally, the court notes with some amusement that the drafters of KRS 427.010(4), while attempting to do otherwise, have inadvertently made the lien avoidance provisions of section 522(f) of the Bankruptcy Code applicable with respect to property on which a debtor has voluntarily granted a lien.

KRS 427.010(4) provides that "no property upon which a debtor has voluntarily granted a lien shall, to the extent of the balance due on the debt secured thereby, be subject to the provisions of *this chapter* ...." (Emphasis supplied).

One of the provisions of *this chapter*, KRS Chapter 427 entitled "Exemptions," is the opt-out provision appearing as KRS 427.170 which denies to individual debtors domiciled in Kentucky the right to claim exemptions under section 522(d) of the Bankruptcy Code.

Logically, if KRS 427.170 no longer applies with respect to property on which an individual debtor has voluntarily granted a lien, an individual debtor may claim an exemption in such property under 11 U.S.C. § 522(d), and in turn may avoid a nonpossessory, nonpurchase-money lien on such property.

■ This logic is not an aberration of the law in view of the general rule that exemption statutes are to be construed liberally in favor of the debtor.

■ The foregoing result does not entirely resolve the conflict between KRS 427.010(4) and Federal law because the statute also provides "[n]otwithstanding any other provision of law, no property upon which a debtor has voluntarily granted a lien shall, to the extent of the balance due on the debt secured thereby, ... be exempt from forced sale under process of law." Taken literally, this statute collides directly with the lien avoidance provision of 11 U.S.C. § 522(f)(2) and is therefore unenforceable in a bankruptcy proceeding.

JURISDICTION:

Pursuant to 28 U.S.C. § 157 the district court for this district has referred all cases under title 11 and any and all proceedings arising under title 11 or arising in or related to a case under title 11 to the bankruptcy judge for the district. The bankruptcy judge is authorized by 28 U.S.C. § 157(b) to finally determine, subject to the right of the parties to appeal, any core proceeding including the allowance or disallowance of exemptions from property of the estate, the determination of the validity, extent, or priority of liens, or the adjustment of the debtor-creditor relationship. 28 U.S.C. § 157(b)(2)(B), (K), (O).

It is the view of this court that 28 U.S.C. § 157, which in the context of this case authorizes a non-article III bankruptcy judge to invalidate a state statute under the Supremacy Clause of the Constitution as an incidental extension of such judge's power to allow exemptions from property of the estate, is probably unconstitutional. This court has the uneasy feeling that in striking down a state law it is exercising the judicial power of the United States in the fullest sense. But we are instructed not to find that a proceeding is not a core proceeding solely on the basis that its resolution may be affected by State law. 28 U.S.C. § 157(b)(3).

Because of the length and complexity of this opinion, unless specifically requested to reconsider the matter, this court chooses to let a higher court wrestle with the ques-

tion of the constitutionality of the jurisdictional provisions of 28 U.S.C. § 157.

CONCLUSION:

In conformity with this opinion, an order shall be entered avoiding the lien of Credithrift of America on the household furnishings of the debtor as a lien that impairs the exemption of the debtor in such property.