In the Matter of Fred THOMPSON, Cindy Thompson, Debtors/Plaintiffs,

v.

THORP FINANCIAL SERVICES, Defendant.

Bankruptcy No. 3-84-01728(A).

United States Bankruptcy Court, S.D. Ohio, W.D.

Nov. 30, 1984.

George Ledford, Englewood, Ohio, trustee/plaintiff.

Jeffrey V. Laurito, Dayton, Ohio, for defendant.

Brian C. Petroziello, Dayton, Ohio, for debtors/plaintiffs.

## DECISION

CHARLES A. ANDERSON, Bankruptcy Judge.

Presently before the Court is the Chapter 13 Trustee's Motion for Judgment on the Pleadings, filed on October 10, 1984. In his motion, the Trustee seeks a judgment in favor of debtors, Fred Thompson and Cindy Thompson, on their Motion to avoid lien on a nonpossessory, non-purchase money security interest held by Thorp Financial Services. In support of his motion, the Trustee cites this Court's opinion in *In re Lewis*, 38 B.R. 113, 10 C.B.C.2d 437 (Bkrtcy.S.D.Ohio 1984).

Debtors filed a voluntary petition seeking relief under Chapter 13 of the Bankruptcy Code on August 14, 1984. On their Schedule of Debts, they listed Thorp Finance as holding a voidable $3,410 security interest in household goods. On August 24, 1984, they moved to avoid Thorp's lien, prompting the Trustee's action to institute this action. On September 17, 1984, Thorp filed its objection to avoidance of lien. On September 27, 1984, Thorp filed an Answer.

In *Lewis*, this Court held that the rationale of *In re Pine*, 717 F.2d 281 (6th Cir. 1983), *cert. den.* — U.S. —, 104 S.Ct. 1711, 80 L.Ed.2d 183, which interpreted the Tennessee exemption statute, did not apply to the Ohio exemption statute, O.R.C. § 2329.66(A)(4)(b), and that Ohio debtors may avoid non-possessory, non-purchase money security interests in household goods to the extent of the statutory limitations of $200.00 per item. The Court then specifically reserved judgment as to the validity under the Constitution of Ohio as to the extension of Ohio's "opt-out" provision which had expired on September 28, 1983, after expressing serious misgivings.

In a recent opinion, *In re Spears*, 12 B.C.D. 475, 744 F.2d 1225 (6th Cir.1984), the Sixth Circuit stated:

"This Court has held in *In re Pine* 717 F.2d 281, 284 (6th Cir.1983), cert. denied, [— U.S. —, 104 S.Ct. 1711] [80 L.Ed.2d 183] (1984), that when a state has opted out under 11 U.S.C. § 522(b) of the application of the federal exemptions, 'debtors may avoid liens only on that property which the states have declared to be exempt.' *Under Ohio law, a debtor may exempt only an interest in property that is not subject to any third party liens.* Ohio Rev. Code Ann. §§ 2329.66, 2329.661 (Page 1981). Accordingly, the debtors in this case may not avoid Thorp's lien on their household goods." (emphasis supplied.)

Although the lienholder in both *Spears* and *Lewis* is Thorp Credit, Inc. of Ohio, apparently the issue of the constitutional validity of the statute was not presented for consideration in *Spears*.

However, subsequent action by the General Assembly of the State of Ohio after the *Lewis* decision has mooted this constitutional issue. In Amended Substitute Senate Bill No. 171, File 99, effective as of June 13, 1984, the Ohio opt-out section was extended until January 1, 1986. This extension appears proper and not in violation of the Ohio Constitution's "one issue rule." Given such intent by the Ohio General Assembly, this Court will not distinguish between those debtors filing during any gap period and those filing after such valid extension.

Although this Court might otherwise agree with the well-reasoned opinion by Judge Joe Lee in *In re Lawson*, 42 B.R. 206, 12 B.C.D. 62 (Bkrtcy.E.D.Ky.1984), the Court is constrained to follow the teachings and tenor of the Sixth Circuit in *Spears* as to what household goods Ohio debtors may exempt.

Furthermore, this Court notes with approval Judge Lee's observation in *Lawson* which is consistent with the rationale in *Lewis* at pp. 68–69:

"The Uniform Exemptions Act, drafted by the National Conference of Commissioners on Uniform State Laws, approved in 1976 and recommended for enactment in all states, would preclude enforcement of a nonpossessory, nonpurchase-money security interest in furnishings and appliances reasonably necessary for one household, as well as certain other prop-

erty. See section 11, Uniform Exemptions Act. The comment to section 11 states that restrictions on enforceability of nonpurchase-money security interests in household goods were recommended by The National Commission on Consumer Finance, as previously discussed in this memorandum. The comment also cites FTC's proposed Trade Regulation Rules on Credit Practices § 444.2(a)(4)[1] and FRB's proposed Rules on Uniform Credit Practices § 228.2(a)(4)[2]. These proposed regulations of the Federal Trade Commission and Federal Reserve Board were based on the conclusion that the taking of a non-possessory, nonpurchase-money security interest in household goods should be defined as an unfair trade practice."

The Report of the Presiding Officer following hearings by the Federal Trade Commission on its proposed regulation states:

The real purpose of taking a security interest in such property is simply to obtain a device to terrorize consumers or to harass them until payments are made on the loans. Even if such goods are repossessed, the costs of pick-up, storage, and sale would probably exceed the amount of the proceeds.

Threats to repossess household goods have several effects. They may force the consumer to borrow from another source, perhaps giving security interests in other property, to refinance the obligation with the original creditor with attendant costs, or to obtain a consolidation loan for a much greater amount. In each of these cases the consumer is falling more deeply into debt and is making it unlikely that the family's financial affairs can be put in order without resort to bankruptcy.

Since the usual causes of default are for reasons beyond the control of the consumer, e.g., loss of job, abandonment by spouse, and illness, the threat to repossess household goods causes great emotional suffering, humiliation, anxiety, and deep feelings of guilt; and this distress can lead to physical brakdowns or illness, dusruption of the family, and undue strain on the family relationships.

Evidence that the actual value of the household goods included in a blanket security clause is of no particular importance is provided by the fact that creditors do not ordinarily inspect, inventory, or appraise them. Moreover, little effort is made to determine the existence of prior claims or grants of security interest in the property even though the duplication of liens would be evident from statements of the prospective borrower or from records in the appropriate clerk's office.

Report of the Presiding Officer on Proposed Trade Regulation Rule: Credit Practices, 16 C.F.R. Part 444; Public Record 215–42, August, 1978, 136–37.

It should be noted that on March 1, 1984 the Federal Trade Commission issued a final rule defining the taking of 'a nonpossessory security interest in household goods other than a purchase money security interest' to be an unfair act or practice within the meaning of Section 5 of the Federal Trade Commission Act. This regulation becomes effective March 1, 1985. See 49 Fed.Reg. 7740, at 7761–68; 7789–90 (March 1, 1984) (to be codified at 16 C.F.R. Part 444).

Hence, the Trustee's motion for judgment on the pleadings and Debtors' motion to avoid lien must be denied.

---

**1.** 40 Fed.Reg. 16,347 (1975) (to be codified at 16 C.F.R. pt. 444) (proposed April 11, 1975). See also Hearings before the Subcommittee on Civil and Constitutional Rights of the House Committee on the Judiciary, part 2, 94th Cong., 1st and 2d Sess. 757–66 (1976) (statement of David H. Williams).

**2.** 40 Fed.Reg. 19,495 (1975) (to be codified at 12 C.F.R. pt. 228) (proposed May 5, 1975).