**In re William S. WOLFE and Deborah K. Wolfe, Debtors.**

**Bankruptcy No. 5-85-00178-T-7.**

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

Aug. 7, 1985.

Jose C. Rodriguez, Rodriguez, Rodriguez & Buttles, San Antonio, Tex., for William S. Wolfe and Deborah K. Wolfe.

Deborah D. Williamson, Cox & Smith, San Antonio, Tex., for Lytle State Bank.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration of the motion filed by the debtors, William S. Wolfe and Deborah K. Wolfe, to avoid a non-purchase money, non-possessory lien held by Lytle State Bank, hereinafter referred to as creditor; response to said motion filed by the creditor; all parties being represented by their respective attorneys of record; on memoranda of law having been considered by the Court; the Court hereby finds as follows, to-wit:

### I.

The Court has jurisdiction of the parties and subject matter of this proceeding pursuant to 28 U.S.C. § 1334(a), and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(K).

### II.

The debtor, William S. Wolfe, borrowed $3258.42, from Lytle State Bank on or about July 3, 1984. As security for the loan, Wolfe executed a promissory note and security agreement granting the creditor a non-possessory, non-purchase money security interest in household goods. Deborah K. Wolfe did not join as a co-maker on the note nor did she execute the security agree-

ment creating the lien on the household goods.

On March 4, 1985, debtors filed their petition for bankruptcy under Chapter 7 of the Bankruptcy Code. Debtors elected to take advantage of the Texas statutory exemptions under Chapter 42 of the Texas Property Code Annotated, which states that certain personal property (including household goods) is "exempt from attachment, execution, and seizure for the satisfaction of debts, except for encumbrances properly fixed on the property". Tex.Prop. Code Ann. § 42.001(a). Debtors maintain that 11 U.S.C. § 522(f), which allows a debtor to avoid a non-possessory, non-purchase money lien to the extent of the amount of the exemption, should control.

### III.

■ The first issue that must be resolved is whether the debtors should be permitted to utilize the lien avoidance provisions found in 11 U.S.C. § 522(f), when they have elected to claim state law exemptions, one of which prohibits an exemption in property which is encumbered by properly filed liens. The Court notes at this point that the State of Texas is a "non-opt out" state in that its legislature has enacted no law prohibiting the election of federal exemptions found in 11 U.S.C. § 522(d). See: *Matter of Cannady,* 653 F.2d 210 (5th Cir.—1981).

The second issue that must be resolved is whether the lien of the creditor encumbers the interest of the debtor, Deborah K. Wolfe, in these household goods since she was not required to execute the promissory note nor the security agreement.

In this opinion, all further statutory references will be considered as Title 11, United States Code, unless specifically noted otherwise.

### IV.

A case on point in the Fifth Circuit dealing with the application of § 522(f) to state law exemptions is *Matter of McManus,* 681 F.2d 353 (5th Cir.—1982). *McManus* dealt with a couple who had petitioned for bankruptcy under Chapter 11 of the Bankruptcy Code. A creditor held a non-possessory, non-purchase money security interest in their household goods and furnishings. The couple moved to avoid this lien under § 522(f). The court, in holding that the lien could not be avoided, looked to two Louisiana statutes dealing with exemptions. One statute permitted Louisiana to opt out of the § 522(d) federal exemptions; the other statute stated that household goods and furnishings subject to a chattel mortgage were not exempt. The decision was based on the following reasoning: (1) § 522(f) is not a separate avoidance statute; it provides only a limited means of avoiding liens "since the only liens that may be avoided are those impairing an exemption the debtor would have been entitled to receive under section 522(b)." *Id.* at 355; (2) Louisiana had opted out of the "federal laundry list" (§ 522(d)), *Id.* at 356; since § 522(f) is tied into § 522(b), and § 522(b) is tied into applicable state law, Louisiana having opted out of § 522(d), state law controlled in the avoidance of liens. *Id.* at 356. In essence the court was saying that § 522(f) does not exist independently of the remaining portions of § 522.

### V.

In the *McManus* case, Louisiana had opted out of the § 522(d) exemptions. The case of *In Re Allen,* 725 F.2d 290 (5th Cir.—1984) dealt with a situation where the state, i.e., Texas, had not opted out of § 522(d), but instead gave the debtors the choice of selecting the state or federal exemptions. In *Allen,* the debtors had given the creditor a non-possessory, non-purchase money security interest in certain farming implements and tools of the trade. Debtor-husband claimed his exemptions (concerning the tools and farming implements) under a Texas statute which stated that certain items (which included tools of the trade) were exempt "except for encumbrances properly fixed thereon." Tex.Rev. Civ.Stat.Ann. Art. 3836. His wife claimed her exemptions under § 522(d). (Parenthetically, it is noted that following the passage of the Bankruptcy Amendments and Federal Judgeship Act of 1984, this

dual election practice of one spouse selecting federal exemptions and the other state exemptions is no longer permissible.) The Fifth Circuit disallowed the lien avoidance on the encumbered property claimed by the husband. The court reasoned that § 522(f) did not create any new exemptions. "It merely gives debtor the power to avoid a lien on property to the extent that the lien impairs an exemption to which the debtor would have been entitled under § 522(b)." *Id.* at 292. The court went on to say that "if one elects to claim [exemptions] under the Texas statute, the property would not be § 522(b) exempt property and would not be exempt under the section (f) savings clause." *Id.* at 293. Although the *McManus* case dealt with home furnishings, and the *Allen* case dealt with tools of the trade, the court in *Allen* stated in its closing remarks that "[t]here is no material distinction between the exemption limitation prescribed by Louisiana law and that provided by Texas law. *McManus* mandates the conclusion we reach." *Id.* Thus the *Allen* decision holds that it is not important that a state has opted out of § 522(d) via § 522(b). This court, however, attaches significance to the fact that the debtors herein are not mandated by state law to utilize only a state exemption which on its face precludes the use of § 522(f). Since, as mentioned hereinabove, the State of Texas is a non-opt out state, the debtors in this case are not prohibited by a state statute from claiming their exemptions under § 522(d). If the debtors had elected to claim their exemptions under § 522(d), there is no question but that the provisions of § 522(f) would permit them to avoid the creditor's lien in their household goods.

The *Allen* decision actually presents a more viable case than *McManus*. In *McManus*, the debtors had no choice in selecting under which statutes (state or federal) to claim their exemptions. In *Allen*, as in this case, a choice was available.

## VI.

The foregoing cases are not without criticism. The Eleventh Circuit has firmly taken an opposite view from the Fifth Circuit *McManus* decision. The case of *In Re Hall*, 752 F.2d 582 (11th Cir.—1985), is one example. *Hall* dealt with a non-possessory, non-purchase money security interest in household goods and furnishings. The State of Georgia has opted out of the § 522(d) exemptions, O.C.G.A. 44–13–100(b), and had substituted designated state exemptions, O.C.G.A. 44–13–100(a)(4). The Eleventh Circuit, in holding that § 522(f) lien avoidance ability survived after the state had opted out of § 522(d), stated that: all subsections of § 522 should be given effect, *Id.* at 586; the supremacy clause of the United States Constitution (Art. VI, cl. 2) gives effect to § 522(f) that will survive over state law, *Id.;* just because a state can opt out of § 522(d) via § 522(b) does not mean it can opt out of § 522(f), *Id.* at 587; and the lien avoidance provision insures that the debtor is left with enough property to guarantee a fresh start after discharge of debts. *Id.* at 588.

Another case allowing § 522(f) to maintain its effect in face of state laws to the contrary is *In Re Lawson*, 42 B.R. 206 (Bankr.E.D.Ky.—1984). The court, in holding the federal lien avoidance statute was enforceable over the state exemption statute, took great interest in the legislative history of § 522 and subsequent Federal Trade Commission reports concerning the practice of taking non-possessory, non-purchase money security interest in household goods. The opinion stated that the legislative history of the section, i.e. § 522, showed no intention on the part of Congress to tie the lien avoidance provisions in with the state opt out provision; and that Congress considered the taking of a non-possessory, non-purchase money security interest in household goods, tools of the trade or health aids as an unfair credit practice. The Federal Trade Commission conclusion was based on a report of the National Commission on Consumer Finance which found that the taking of a non-possessory, non-purchase money security interest in household goods by a creditor only served as a basis to threaten the debtor to pay back money owed. This is premised on the theory that the usual resale value of household goods, etc., in the hands

of the creditor is relatively small compared to the replacement cost to the debtor. The Federal Trade Commission issued a final ruling, that became effective March 1, 1985, "defining the taking of a 'non-possessory security interest in household goods other than a purchase money security interest' to be an unfair act or practice within the meaning of Section 5 of the Federal Trade Commission Act." *Id.* at 216. (to be codified at 16 C.F.R. Part 444).

The *McManus, Hall,* and *Lawson* cases are similar in that each of the underlying states had enacted statutes prohibiting the use of the federal exemptions set forth in § 522(d). The *Allen* case, which also involved the State of Texas, is more factually similar to the case now before this court. Although the *Allen* court relied somewhat on the *McManus* decision, this court sees a significant distinction where debtors are totally foreclosed from utilizing the federal exemptions by state law, and the situation where the federal exemptions are still available and the debtors simply elect not to choose them.

## VII.

The Fifth Circuit opinions in *McManus* and *Allen* have resolved the issue as to whether § 522(f) can be used to avoid the creditor's lien in the face of the Texas personal property exemption statute. These two cases have squarely decided the issue in favor of the creditor under identical factual circumstances as those existing in the case before this Court.

## VIII.

■ The debtors have raised the issue as to whether Lytle State Bank can enforce its lien against the interest of Deborah K. Wolfe in the household goods inasmuch as she was not required to execute the promissory note nor the security agreement creating the lien. Texas state law, i.e., § 5.61 Rules of Marital Property Liability, is controlling on this issue and provides as follows:

§ 5.61. Rules of Marital Property Liability

(a) A spouse's separate property is not subject to liabilities of the other spouse unless both spouses are liable by other rules of law.

(b) Unless both spouses are liable by other rules of law, the community property subject to a spouse's sole management, control, and disposition is not subject to:

(1) any liabilities that the other spouse incurred before marriage; or

(2) any nontortious liabilities that the other spouse incurs during marriage.

(c) The community property subject to a spouse's sole or joint management, control, and disposition is subject to the liabilities incurred by him or her before or during marriage.

(d) All the community property is subject to tortious liability of either spouse incurred during marriage.

■ There is a presumption under Texas law that property possessed by either spouse, during marriage, is community property, Tex.Fam.Code Ann. § 5.02 (Vernon 1975). To overcome this presumption, "the party asserting separate ownership must clearly trace the original separate property into the particular assets on hand during the marriage." *Cockerham v. Cockerham,* 527 S.W.2d 162, 167, (Tex.—1975). Indeed, if a spouse can establish that certain property belongs to that spouse and is not community property, then that property is not subject to the liabilities of the other spouse "unless both spouses are liable by other rules of law." Tex.Fam.Code Ann. § 5.61(a) (Vernon 1975).

■ As stated in the *Cockerham* case, "[t]o determine whether a debt is only that of the contracting party or if it is instead that of both the husband and wife, it is necessary to examine the totality of the circumstances in which the debt arose. Of particular importance ... is the consideration of implied assent to the debt by the noncontracting party ..." *Id.* at 171. A factor to be taken into account is whether the debt arose during marriage. These debts are "presumed to be on the credit of the community and thus are joint communi-

904

ty obligations, unless it is shown the creditor agreed to look solely to the separate estate of the contracting spouse for satisfaction." *Id.* Once this test is satisfied, community liability is established. This test is, however, the first of a two part test to determine whether the debt is a joint obligation. If the debt is joint, then even the separate property of the noncontracting spouse may be recovered to satisfy the debt. Once the debt has been characterized as a community liability, the individual facts of a particular case must be applied to see if the noncontracting spouse acquiesced in or took benefits from the transaction in which the debt was incurred. If so then the debt is a joint liability.

The debtors presented no proof whatsoever that the household goods were the exclusive property of Mrs. Wolfe. Consequently, as a result of the very character of this property, i.e., household goods, the Court must consider these goods to be community property owned and controlled by both of the debtors. There also was no proof presented that Mrs. Wolfe did not benefit from or acquiesce in the loan transactions. Since there is no evidence to overcome the presumption set forth above, the Court must find that the debt owed to Lytle State Bank is a joint liability of the debtors. Therefore, pursuant to the terms of § 5.61, quoted hereinabove, the household goods are not divisible and are to be considered encumbered fully by the lien of Lytle State Bank.

### IX.

In conclusion, for the reasons cited hereinabove, the motion to avoid the non-possessory, non-purchase money lien filed by the debtors as to their household goods encumbered to Lytle State Bank, is not well taken as to each of the issues raised and will be dismissed. An Order will be entered consistent with this Opinion.