681 F.2d 353
 6 Collier Bankr.Cas.2d 1194, 9 Bankr.Ct.Dec. 561,
Bankr. L. Rep. P 68,925
 In the Matter of Thomas Yale McMANUS and Betty Sue Smith
McManus, Bankrupts.
Thomas Yale McMANUS and Betty Sue Smith McManus, Appellants,
v.
AVCO FINANCIAL SERVICES of LOUISIANA, INC., Appellee.
In the Matter of Wallace GIPSON and Bobbie Phenix Gipson, Bankrupts.
BLAZER FINANCIAL SERVICES, INC., Creditor/Appellant,
v.
Wallace GIPSON and Bobbie Phenix Gipson, Debtors/Appellees.
 Nos. 81-3080, 81-3445.
 United States Court of Appeals,
Fifth Circuit.
 July 26, 1982.
 
 Wayne H. Cobb, Jr., Shreveport, La., for appellants in No. 81-3080.
 Michael F. Adoue, New Orleans, La., for appellee in No. 81-3080.
 Herschel C. Adcock, Baton Rouge, La., amicus curiae for Blazer Financial Services, Inc.
 Adcock, Dupree & Shows, Herschel C. Adcock, Martha S. Hess, Baton Rouge, La., for creditor/appellant in No. 81-3445.
 Donald R. Avery, Baton Rouge, La., for debtors/appellees in No. 81-3445.
 Appeal from the United States District Court for the Western District of Louisiana.
 Appeal from the United States District Court for the Middle District of Louisiana.
 Before DYER*, JOHNSON and WILLIAMS, Circuit Judges.
 JOHNSON, Circuit Judge:
 
 I.
 
 1
 Two bankruptcy cases, both arising out of Louisiana, have been consolidated for appeal. In the case of McManus v. Avco Financial Services of Louisiana, a husband and wife filed a joint petition for relief under Chapter 13 of the Bankruptcy Act, 11 U.S.C.A. § 1301, et seq. In the couple's petition and proposed plan, Avco Financial Services of Louisiana (Avco) was listed as an unsecured creditor. Avco, however, in its proof of claim and in a formal rejection of the couple's proposed plan, established that it was a fully secured creditor. Avco held a promissory note secured by a nonpossessory, nonpurchase money security interest in the form of a chattel mortgage on certain household goods and furnishings belonging to the couple and the couple's dependents. The bankruptcy court for the Western District of Louisiana held a hearing on Avco's rejection of the couple's proposed plan on July 23, 1980. The hearing was continued until August 25, 1980. On July 28, 1980, the couple moved to avoid Avco's lien under 11 U.S.C.A. § 522(f), in order to allow them to exempt their household goods and furnishings from the bankruptcy estate. The Motion for Avoidance was consolidated with Avco's formal rejection.
 
 
 2
 Subsequently, the bankruptcy court rendered judgment in favor of Avco and against the couple, upholding Avco's rejection of the proposed plan and denying the couple's Motion for Avoidance of Avco's nonpossessory, nonpurchase money security interest in their household goods and furnishings. The couple appealed this determination to the district court. The district court affirmed the decision of the bankruptcy court and this appeal followed. This Court affirms the judgment of the district court in McManus.
 
 
 3
 The case of Gipson v. Blazer Financial Services arose in basically the same way. In Gipson, a married couple borrowed money from Blazer Financial Services (Blazer). Security for the debt was in the form of a nonpossessory, nonpurchase money security interest in the couple's household goods and furnishings. Sometime thereafter, the couple filed a voluntary petition for relief under the Bankruptcy Act and an application to avoid the lien pursuant to 11 U.S.C.A. § 522(f). As in McManus, the couple hoped to avoid the lien in order to exempt their household goods and furnishings from the bankruptcy estate.
 
 
 4
 In Gipson, the bankruptcy court cancelled Blazer's nonpossessory, nonpurchase money security interest. Blazer appealed the determination of the bankruptcy court to the district court. The district court affirmed the bankruptcy court's judgment and this appeal followed. This Court reverses the judgment of the district court in Gipson.
 
 II.
 
 5
 Section 541 of the Bankruptcy Act dictates that, upon commencement of an action in bankruptcy, all property of the debtor becomes property of the bankruptcy estate. 11 U.S.C.A. § 541. However, once the property becomes a part of the estate, the debtor then is allowed to exempt certain property. The debtors involved in the consolidated cases contend that, in Louisiana, a nonpossessory, nonpurchase money security interest in household goods and furnishings may be avoided pursuant to 11 U.S.C.A. § 522(f). Such an avoidance would allow the debtors to exempt some of their property from the bankruptcy estate. The creditors involved in the cases sub judice argue that the State of Louisiana, by enacting certain legislation, has precluded such an avoidance.
 
 
 6
 The first step in resolution of the controversy is an examination of the federal avoidance mechanism the debtors wish to utilize. This mechanism, expressed in 11 U.S.C.A. § 522(f), states in full:
 
 
 7
 (f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is-
 
 
 8
 (1) a judicial lien; or
 
 
 9
 (2) a nonpossessory, nonpurchase-money security interest in any-
 
 
 10
 (A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;
 
 
 11
 (B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or
 
 
 12
 (C) professionally prescribed health aids for the debtor or a dependent of the debtor.
 
 
 13
 Significantly, the avoidance provisions of section 522(f) are available to debtors seeking to avoid a lien only "to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b)" of section 522. In other words, this federal avoidance section is not a separate exemption statute. It provides only a limited mechanism for avoiding liens, since the only liens that may be avoided are those impairing an exemption the debtor would have been entitled to receive under section 522(b). Since the invocation of section 522(f) is dependent upon whether a debtor may be legally entitled to an exemption under section 522(b), the second step in resolving the controversy is an examination of section 522(b).
 
 
 14
 Section 522(b) provides the individual states with a choice of allowing their debtors one of two methods of exempting property from the bankruptcy estate.[1] First, depending upon state law, a debtor may be entitled to utilize the federal "laundry list" exemptions specified in section 522(d).[2] Use of the federal laundry list is precluded, however, if "the state law that is applicable to the debtor ... specifically does not ... authorize" its use.[3] In those instances in which state law precludes use of the federal laundry list, a debtor may exempt from property of the bankruptcy estate any property that is legally exempt under either (1) federal law other than the previously described laundry list or (2) applicable state or local law.
 
 
 15
 Section 522(b) expressly grants the states broad discretion and an open-ended opportunity to determine what property may be exempt from the bankruptcy estate, as long as the state law does not conflict with property exempt under federal law other than the laundry list. Significantly, the section does not mandate that debtors be guaranteed a right to exempt particular types of property. The unambiguous language of section 522(b) implicitly indicates a state may exempt the same property included in the federal laundry list, more property than that included in the federal laundry list, or less property than that included in the federal laundry list. The states also may prescribe their own requirements for exemptions,[4] which may either circumscribe or enlarge the list of exempt property.
 
 
 16
 This leads to the third step in the Court's analysis. Examination of the avoidance provision-11 U.S.C.A. § 522(f)-reveals it is tied to the exemption provision, 11 U.S.C.A. § 522(b). In turn, examination of 11 U.S.C.A. § 522(b) reveals it is tied to applicable state law. Accordingly, the third step in resolving the present dispute is an evaluation of applicable state law.
 
 
 17
 Louisiana is the applicable state in the cases sub judice, and the State of Louisiana precludes a debtor's use of the federal laundry list by expressly not authorizing its use. LSA-R.S. 13:3881 B states,
 
 
 18
 In cases instituted under the provisions of Title 11 of the United States Code, entitled "Bankruptcy," there shall be exempt from the property of the estate of an individual debtor only that property and income which is exempt under the laws of the State of Louisiana and under federal laws other than subsection (d) of Section 522 of said Title 11 of the United States Code.
 
 
 19
 (emphasis added). By enacting section 13:3881 B, Louisiana, pursuant to its federal authority to do so, has "opted out" of the opportunity to allow its debtors to use the federal laundry list of exemptions contained in 11 U.S.C.A. § 522(d). The only property a Louisiana debtor is entitled to exempt from the bankruptcy estate is property exempt under federal law other than the laundry list[5] and property exempt under Louisiana state law.
 
 
 20
 The exemptions available under Louisiana law are found in LSA-R.S. 13:3881. Subsection 3881(A)(4) lists household goods and furnishings as property a debtor may exempt from the estate. This general list of exemptions only provides part of the answer, however. LSA-R.S. 13:3885 expressly states that household goods and furnishings subject to a chattel mortgage are not exempt. The section states:
 
 
 21
 Notwithstanding the provisions of R.S. 13:3881(2) and (4) to the contrary, a person who has granted a chattel mortgage on his property described in R.S. 13:3881(2) or (4) may not thereafter claim an exemption from the seizure of such mortgaged property for the enforcement of that mortgage.
 
 
 22
 (emphasis added). Section 13:3885 modifies and limits the general list of property that may be exempt by providing further elaboration and explanation of what property Louisiana allows debtors to exempt.[6] At the outset, the section is entitled, "Chattel mortgage; exception to exemption from seizure." The title of the section reveals that it is meant to clarify the definition of what property is exempt by delineating a specific exception to the general list provided in section 13:3881. Indeed, the section begins with the language, "Notwithstanding the provisions of R.S. 13:3881(2) and (4) to the contrary ..."
 
 
 23
 The language of section 13:3885 indicates that household goods and furnishings may take two forms in Louisiana. Such property, of course, may be unencumbered. In such a case, a Louisiana debtor is entitled to exempt his household goods and furnishings from the bankruptcy estate pursuant to section 13:3881(A)(4). Household goods and furnishings also may be subject to a chattel mortgage. If this is the case, a Louisiana debtor is not entitled to claim an exemption, notwithstanding the provisions of section 13:3881(A)(4) to the contrary. The inability to claim an exemption occurs regardless of whether a debtor could have claimed an exemption had there been no mortgage. While Louisiana allows a general exemption for household goods and furnishings, if a person changes the character of those goods or furnishings by making them the subject of a chattel mortgage, he can claim no exemption, because Louisiana expressly defines goods of such a character out of the list of exempt property.
 
 
 24
 If Louisiana had not expressly defined mortgaged household goods and furnishings out of the list of exempt property, the result would be arguably different. In such a hypothetical instance, household goods and furnishings would be, as a general rule, exempt pursuant to section 13:3881(A)(4). Of course, an individual could waive his exemption by granting a chattel mortgage on the property. If the debtor subsequently filed a petition for relief under Chapter 13 of the Bankruptcy Act, 11 U.S.C.A. § 522(f) would be available to avoid the waiver because the lien would impair an exemption to which the debtor would have been entitled under section 522(b).
 
 
 25
 The difference between the hypothetical instance and the cases sub judice is that, in the hypothetical instance, the state would not have exercised its authority to deny exemptions for household goods and furnishings under certain circumstances. Household goods and furnishings, in any form, would be exempt, although perhaps the exemption could be waived.
 
 
 26
 However, the State of Louisiana, for whatever policy justification, has utilized its authority under 11 U.S.C.A. § 522(b) to mandate that property of a certain character-household goods and furnishings subject to a chattel mortgage-is, by definition, not exempt under 11 U.S.C.A. § 522(b). Consequently, the chattel mortgages the debtors in the cases sub judice wish to avoid do not impair an exemption to which they would have been entitled under section 522(b). To the contrary, the chattel mortgages are the characteristic determinative of whether household goods and furnishings are exempt in Louisiana. This feature gives rise to Louisiana's specific denial of an exemption under 11 U.S.C.A. § 522(b).[7]
 
 
 27
 This Court determines that debtors in Louisiana are not entitled to exempt household goods and furnishings subject to a chattel mortgage from the bankruptcy estate. Consequently, a Louisiana debtor may not utilize 11 U.S.C.A. § 522(f) to avoid the chattel mortgage. Accordingly, this Court affirms the district court's determination in the case of McManus v. Avco Financial Services of Louisiana. It reverses the determination of the district court in the case of Blazer Financial Services v. Gipson and remands the case for further proceedings consistent with this opinion.
 
 DYER, Circuit Judge, dissenting:
 
 28
 I respectfully dissent. The narrow issue in these appeals is whether 11 U.S.C. § 522(f) is available to a Louisiana debtor to avoid an otherwise valid nonpossessory, nonpurchase-money security interest in the form of a chattel mortgage on certain household goods owned by the debtor, in light of LSA-R.S. 13:3885. In my view § 522(f) is available.
 
 
 29
 The opening phrase of § 522(f), "(n)otwithstanding any waiver of exemptions," indicates that the subsection's import is to return the situation to the status quo ante, i.e., prior to any improvident waiver of an exemption by the debtor. When the debtors entered the creditors' office they enjoyed an exemption under Louisiana law from seizure and sale of their household goods; and when they left the office they could no longer claim an exemption for those goods solely because they had improvidently granted a security interest to the creditors covering such goods. I fail to see how this could be characterized as anything but a waiver of exemptions, subject to the avoiding power found in § 522(f).
 
 
 30
 Moreover, since "waiver" is modified by "any" it includes waivers resulting from operation of law, and Louisiana courts have long held that a debtor's execution of a mortgage on exempt property operates as a waiver of exemption. "It is well settled that a debtor, in mortgaging his property, may waive statutory exemptions .... Indeed, our jurisprudence recognizes an implied waiver through conduct, i.e. the execution of the chattel mortgage itself." Aetna Finance Co. v. Antoine, 343 So.2d 1195 (La.App.1977).
 
 
 31
 If the majority opinion correctly states the law, any state can by statute preclude a debtor from availing himself of the loan avoidance provisions found in § 522(f). I cannot conclude that Congress intended to allow states to do this. There is no provision of the Bankruptcy Code which grants the states authority to preempt any subsection of § 522(f) other than subsection (b), which concerns the exemption. Congress intended that even if a state opts out of the federal exemptions, the debtor's lien avoidance power under subsection (f) is not thereby affected. And under the supremacy clause, United States Constitution, art. VI, cl. 2, any conflict between the state lien conservation provision and the federal lien avoidance provision must be constitutionally resolved in favor of federal law. A state's policy determination respecting the manner in which its exemptions may be waived should be given application in its own courts but when the forum is a federal bankruptcy court such state policy determinations are subject to congressional override. Curry v. Associates Financial Services, 11 B.R. 716, (D.C.N.D.Ohio, E.D., 1981).
 
 
 32
 Congress recognized that exemptions, whether state or federal in origin, are an essential feature of the system of financial rehabilitation afforded the hapless debtor in bankruptcy proceedings. Congress reasoned that since exemptions are so essential to this goal of rehabilitation they should be made available to the debtor regardless of whether or not state law would permit their waiver or surrender. This is clearly indicated in S.Rep.No.95-989, 95th Cong., 2d Sess. 76, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5862:
 
 
 33
 (To) protect the debtors' exemptions, his discharge, and thus his fresh start, ... (t)he debtor may avoid ... to the extent that the property could have been exempted in the absence of the lien ... a nonpossessory, nonpurchase-money security interest in certain household and personal goods.
 
 
 34
 Thus it was Congress's clear intent that a debtor benefit to the fullest extent possible exemptions granted to him by applicable state laws, even when he may have improvidently waived such exemptions. It is equally clear that Congress was particularly concerned with eradicating certain unconscionable creditor practices in the consumer loan industry. These practices were deemed to frustrate the rehabilitative nature of the bankruptcy laws by effectively denying the debtor his "fresh start" by taking from him and his family certain property essential to their welfare-household goods and furnishings, tools of the debtor's trade, and medical and health aids. Congress found that since such property has little realizable market value to a creditor, and the replacement cost to the debtor, now without credit, is usually very high, the creditor was able "to use the threat of repossession, rarely carried out, to extract more than he would be able to if he did foreclose or repossess." H.R.Rep.No.595, 95 Cong., 1st Sess. 127 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6088. Congress intended to preclude the creditor from executing this nonconscionable pressure by allowing the debtor to avoid such security interests. "(I)t does not serve the public interest to enforce the expectation of the creditor at the expense of making the debtor a ward of the state." Curry v. Associates Financial Services, supra, at 718.
 
 
 35
 I would affirm the district court in Blazer Financial Services v. Gipson and reverse the district court in McManus v. Avco Financial Services of Louisiana.
 
 
 
 *
 Circuit Judge of the Eleventh Circuit, sitting by designation
 
 
 [1]
 Section 522(b) states in full:
 (b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate either-
 (1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative,
 (2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place; and
 (B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.
 
 
 [2]
 The federal laundry list expressed in 11 U.S.C.A. § 522(d) lists eleven separate types of property that may be exempted. Household goods and furnishings are included in the list
 
 
 [3]
 "The State law that is applicable to the debtor" is set out in subsection (2)(A) of § 522(b). Subsection (2)(A) says the state or local law applicable is the state or locale that "on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place."
 
 
 [4]
 The bankruptcy court in McManus was correct in pointing out that the language of 11 U.S.C.A. § 522(b) clearly indicates that "(o)nce a state has exercised its option to preclude the use of 522(d) exemptions, it may create whatever exemptions it so chooses."
 
 
 [5]
 There is no question that no federal law other than the laundry list contained in 11 U.S.C.A. § 522(d) provides a debtor with an exemption for household goods and furnishings
 
 
 [6]
 The debtors in the cases sub judice contend that section 13:3885 is not a modification of or an exception to the exemptions granted by subsection 13:3881(A)(4). The debtors contend that the granting of a chattel mortgage is nothing more than a waiver of an exemption. As such, the debtors argue, they may avoid any chattel mortgages, since 11 U.S.C.A. § 522(f) begins, "Notwithstanding any waiver of exemptions ...."
 
 
 [7]
 The debtors in the cases sub judice also argue that, although the states may opt out of the federal laundry list of exemptions, the states may not change the federal avoidance mechanism. The debtors argue that 11 U.S.C.A. § 522(f) is intended to give debtors a "fresh start" by allowing them to avoid liens that may have been improvidently granted to creditors. They contend that the rehabilitative policy of § 522(f)'s avoidance mechanisms is a policy that overrides any individual state policies, and a state cannot control, either directly or indirectly, the content of the policy of § 522(f)
 As previously noted, however, § 522(f) is not a separate exemption statute. It gives effect to the state's choice of exemptions, and is dependent upon the states for the definition of what liens may be avoided. Section 522(f) is not available if an individual state says a debtor is not entitled to a particular exemption. As the district court in McManus stated, "It just strikes (this Court) that it is a conclusion that is inescapable that Congress must have realized that the states may enact different exemptions which would possibly conflict with Congress' own exemption policy as it was reflected in § 522(d). If Congress has intended subsection (f) to be an overriding policy decision, it would not have made subsection (f) clearly dependent on the policy determinations by the states under § 522(b)."
 Because this Court finds no ambiguity in the language of the statutes, there is no need to resort to a review of legislative history. Tennessee Valley Authority v. Hill, 437 U.S. 153, 98 S.Ct. 2279, 2296-97 n.29, 57 L.Ed.2d 117 (1978); Glenn v. United States, 571 F.2d 270, 271 (5th Cir. 1978).