WALTER E. HOFFMAN, District Judge,
concurring specially:
Although I agree that the majority opinion correctly applies the current law of bankruptcy exemptions, I feel compelled to comment on the state of that law. This area of the law is, in a word, imperfect. And, while perfection may be impossible to obtain in bankruptcy legislation as in all other human endeavors, one would have expected the Bankruptcy Reform Act of 1978 (“the BRA”)[1] to have produced a more rational exemption scheme than is now operating throughout this country.
Section 522 of the BRA, its exemption provision, is in many ways an odd creation. The section reflects conflicting policies, particularly in’ the pivotal subsection (b). Called the “opt-out” provision, this subsection allows states to choose their own exemption schemes by vetoing the federal scheme set out in subsection (d), a situation that has been characterized as “one of the most peculiar federal-state arrangements on record.” Prendergast, State Secrets, Nat’l L.J., Apr. 30, 1979, at 8, col. 1. Over seventy percent of the states have enacted legislation choosing their exemption schemes over the federal one.[2] Virginia, as the majority opinion observes, is one of these states. See Va.Code § 34-3.1 (1984).
If lawmaking is like sausage-making, section 522(b) is a rare piece of sausage. The policies reflected in the section are conflicting because it resulted from an eleventh-hour compromise between the House and the Senate.[3] The House initially adopted a provision erecting a uniform federal exemption that the debtor had the option of claiming. See H.R. 8200, 95th *415 Cong., 1st Sess. § 522(b) (1977), reprinted in 3 App. L. King, K. Klee & R. Levin, Collier on Bankruptcy (15th ed. 1985). Conversely, the Senate provision gave the debtor only state exemptions, offering nothing in the way of a federal exemption. See S. 2266, 95th Cong., 2d Sess. § 522 (1977), reprinted in 3 App. L. King, K. Klee & R. Levin, Collier on Bankruptcy (15th ed. 1985). As the compromise legislation that ultimately was enacted, the present section 522(b) allows a debtor to choose between state and federal exemptions unless that debtor’s state has enacted opt-out legislation. See 11 U.S.C. § 522(b)(1) (1982); see also supra note 2 (indicating the states that have removed the availability of the federal exemption scheme through opt-out legislation).
The compromise of section 522(b) has been criticized widely. See, e.g., articles cited supra note 3; see also Note, The Failure of the Virginia Exemption Plan, 21 Wm. & Mary L.Rev. 851, 876-80 (1980) (criticizing the Virginia legislature for opting out) [hereinafter Note, Failure of Virginia Plan ]. The criticism most often repeated is that the nonuniformity created by section 522(b) frustrates the fresh-start policy at the heart of the bankruptcy laws. See Haines, supra note 3, at 9, 41-43; Rendleman, supra note 3, at 651-52; Vuko-wich, supra note 3, at 801-04; see also Note, Failure of Virginia Plan, at 878 (Virginia’s opt-out legislation hinders rehabilitation of debtors). Furthermore, the constitutionality of section 522(b) has been challenged not only on the ground that it fails to satisfy the constitutional mandate for Congress to enact “uniform [l]aws” governing bankruptcies, but also on the ground that it represents an impermissible delegation of congressional power.[4] The challenges have failed. See supra note 4.
Because a statute is constitutional, however, does not necessarily mean that it is either sensible or effective. The criticism of section 522, in other words, is justified, although not merely for the pro-federal policies that the commentators have voiced. Enactment of the opt-out mechanism would seem to represent congressional deference to state exemption schemes, even at the expense of federal fresh-start policy. See Haines, supra note 3, at 8. Assuming the wisdom of this deference, one must doubt Congress’ sincerity after reviewing the current operation of section 522 in Virginia. The debtors in this case, for instance, each are given a full $5,000 exemption under the Virginia homestead exemption even though, as defined by state law, the exemption is limited to a “householder,”[5] a term synonymous with “head of a family.” See Cheeseman v. Nachman, 656 F.2d 60 (4th Cir.1981) (construing Va.Code § 34-1, which defines “householder” for purposes of who can claim the household exemption in Va.Code § 34-4).
Modifying state law to fit its perceived goals of the bankruptcy laws, this Court in Cheeseman read Virginia’s definition of “householder” to include a husband and wife living together even though arguably *416 the term applies only to one spouse per household.[6] The decision has been indirectly criticized as an example of judicial activism. See Comment, In re Cheeseman: A Judicial Revision of Virginia’s Homestead Exemption Laws, 16 U.Rich.L.Rev. 391 (1982) (characterizing this Court’s decision as “judicial legislation” depending on a “resourceful interpretation of ‘householder’ ”); cf. Haines, supra note 3, at 37 (“Jurisdictions with such statutes [permitting exemptions to a “householder” or a “head of household”] assumed as to each family unit there would be one potential debtor upon whom the unit was so dependent as to make increased exemptions appropriate.”) (emphasis added); cf. also supra note 6 (further authority that “householder” is limited to one person per household). The real basis of the decision in Cheeseman was the holding that, in any event, each spouse was entitled to Virginia’s $5,000 homestead exemption because section 522(m) ensures that section 522 “shall apply separately with respect to each debtor” in a joint case.[7] Cheeseman, 656 F.2d at 63-64 (citing 11 U.S.C. § 522(m) and its legislative history) (alternative holding). Whatever the basis of the holding in Cheeseman, the result shows a lack of deference to Virginia’s exemption scheme inconsistent with the opt-out mechanism of section 522(b).
In contrast with the result in Cheeseman is a decision of this Court interpreting the relationship between subsection 522(i)[8] and *417 Virginia’s homestead filing requirements. See Zimmerman v. Morgan, 689 F.2d 471 (4th Cir.1982). In Zimmerman the debtor had recorded his homestead deed in the wrong county, thus failing to comply with the homestead filing requirement embodied in Va.Code section 34-14 (1984). The debt- or attempted to claim the exemption in bankruptcy, arguing that fresh-start policy and the supremacy of federal law required that he be able to enjoy the exemption despite having failed to comply with state law. This Court disagreed and found no conflict between section 522(i), which allows the debtor to file a list of exemptions to which he thinks he is entitled, and Virginia’s recording requirement, which is a threshold for claiming the exemption. See id. at 472. Significantly, the decision rested on Virginia’s having opted out because, by so doing, bankruptcy exemptions depend on Virginia law both for substance and for procedure. Id. (“Whether [the debtor is entitled to an exemption] will be determined through application of § 522(b)(2)(A) and the state and local exemptions incorporated therein.”).
Yet invocation of section 522(f)’s lien-avoidance provision, as the debtors have done in this case, offers another example of the frustration of, rather than deference to, Virginia’s exemption scheme. When the Nuckolls sought and received their loans from Dominion Bank, they signed an agreement waiving any right to claim homestead exemptions under Virginia law. Now embodied in Va.Code section 34-22 (1984), the homestead waiver has been part of Virginia’s exemption scheme since the first enactment of the homestead exemption in 1870. See Act of June 27, 1870, ch. 157, 1869-70 Va.Acts 198 (first codified at Va.Code ch. 183, § 3 (1873)). Until a revision of the Constitution of Virginia that became effective July 1, 1971, the waiver was authorized by sections 190-193 of the Constitution of 1902 as well as by statute. Two cases decided under the 1873 codification of the homestead provisions recognized that the waiver helped to give debtors the economic mobility necessary for them to provide for the best interests of themselves and their families. See Linkenhoker’s Heirs v. Detrick, 81 Va. 44, 56-57 (1885); Reed v. Union Bank of Winchester, 70 Va. (29 Gratt.) 719, 726-27 (1878) (“The true benefit of [a debtor’s ability to waive the homestead exemption] is ... to utilize the property exempted and make it the basis of credit.”). The Virginia Supreme Court more recently has upheld the waiver provision, observing that the right to waive the homestead exemption is as much a part of the statutory scheme as the right to claim the exemption. See, e.g., Home Owners’ Loan Corp. v. Reese, 170 Va. 275, 279, 196 S.E. 625, 626 (1938); see also Barbarossa v. Beneficial Finance Co., 438 F.Supp. 840 (E.D.Va.1977) (rejecting the notion that the homestead waiver is either unconstitutional under state law or void as against public policy).
Section 522(f) seems to leave little doubt, however, that waivers of exemption are unenforceable. The section begins “Notwithstanding any waivers of exemptions. ...” 11 U.S.C. § 522(f) (1982). Pertinent legislative history indicates that “[t]he avoiding power is independent of any waiver of exemptions.” H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 361-62, reprinted in 1978 U.S.Code Cong. & Ad.News 6318. Some courts have decided that state law can limit debtors’ lien-avoidance powers,[9] but these decisions have been soundly criticized.[10]
*418 I do not take issue with Congress’ apparent intent to override exemption waivers in section 522(f). Congress has the power under the Constitution to establish uniform bankruptcy laws, U.S. Const. art. 1, § 8, and its acts pursuant to that power are the supreme law of the land. U.S. Const. art. 6. What concerns me is the ill-considered and, from all appearances, uninformed way that Congress has constructed an exemption scheme that is self-contradictory on its face.[11] The opt-out provision evidences deference to state exemption schemes such as that in Virginia, as does the interpretation of subsection 522(Z) in Zimmerman, yet subsections 522(f) as well as 522(m), as it is interpreted in Cheeseman, tend to gut significant parts of that scheme. Although the BRA has improved the general state of bankruptcy law,[12] it has in no sense “reformed” the subject of bankruptcy exemptions.[13] Perhaps section 522 is one of those reforms that, as Samuel Taylor Coleridge once put it,[14] itself will need reforming. Surely Congress can do better.

. Pub.L. No. 95-598, 92 Stat. 2549 (codified at 11 U.S.C. §§ 101-151326 (1982)).

. See Ala.Code § 6-10-11 (Supp.1985): Alaska Stat. § 09.38.055 (1983); Ariz.Rev.Stat.Ann. § 33-1133 (Supp.1984-1985); Ark.Stat.Ann. § 36-210 (Supp.1985); California Civ.Proc.Code § 703.130 (West Supp.1985); Colo.Rev.Stat. § 13-54-107 (Supp.1984); Del.Code Ann. tit. 10, § 4914 (Supp.1984); Fla.Stat.Ann. § 222.20 (West Supp.1985); Ga.Code § 44-13-100(b) (1982); Idaho Code § 11-609 (Supp.1985); Ill. Ann.Stat. ch. 110, § 12-1201 (Smith-Hurd 1984); Ind.Code Ann. § 34-2-28-0.5 (Burns Supp. 1984); Iowa Code Ann. § 627.10 (West Supp. 1985); Kan.Stat.Ann. § 60-2312 (Supp.1984); Ky.Rev.Stat.Ann. § 427.170 (Baldwin Supp. 1984); La.Rev.Stat.Ann. § 13-3881 (West Supp. 1985); Me.Rev.Stat.Ann. tit. 14, § 4426 (Supp. 1984-1985); Md.Cts. & Jud.Proc.Code Ann. § 1 1-504(g) (1984); Mo.Ann.Stat. § 513.427 (Vernon Supp.1985); Mont.Code Ann. § 13-2-106 (1984); Neb.Rev.Stat. § 25-15,105 (Supp. 1984); Nev.Rev.Stat. § 21.090(3) (1983); N.H. Rev.Stat.Ann. § 511:2-a (1983); N.Y.Debt. & Cred.Law § 284 (McKinney Supp.1984-1985); N.C.Gen.Stat. § 1C-1601(f) (1983); N.D.Cent. Code § 28-22-17 (Supp.1983); Ohio Rev.Code Ann. § 2329.66(A)(16) (Page 1984); Okla.Stat. Ann. tit. 31, § 1(B) (West Supp.1984-1985); Or. Rev.Stat. § 23.305 (1983); S.C.Code Ann. § 15-41-425 (Law.Co-op Supp.1984); S.D.Comp.Laws Ann. §§ 43-31-30, -45-13 (1983); Tenn.Code Ann. § 26-2-112 (1980); Utah Code Ann. § 78-23-15 (Supp.1985); Va.Code § 34-3.1 (1984); W.Va.Code § 38-10-4 (1985); Wyo.Stat. § 1-20-109 (Supp.1985).
The following fourteen states have not opted out at this date: Connecticut, Hawaii, Massachusetts, Michigan, Minnesota, Mississippi, New Jersey, New Mexico, Pennsylvania, Rhode Island, Texas, Vermont, Washington, and Wisconsin.

.See generally Haines, Section 522’s Opt-Out Clause: Debtors’ Bankruptcy Exemptions in a Sorry State, 1983 Ariz.St.L.J. 1, 5-10; Rendleman, Liquidation Bankruptcy Under the ’78 Code, 21 Wm. & Mary L.Rev. 575, 650-52 (1980); Vukowich, Debtors’ Exemption Rights Under the Bankruptcy Reform Act, 58 N.C.L.Rev. 771, 772-75, 803-04 (1980).

. Both of these constitutional challenges were rejected by the United States Court of Appeals for the Seventh Circuit in a recent case. See In re Sullivan, 680 F.2d 1131 (7th Cir.), cert. denied, 459 U.S. 992, 103 S.Ct. 349, 74 L.Ed.2d 388 (1982). Historically, the United States Supreme Court has considered the term "uniformity" to mean geographical uniformity. See id. at 1133 (citing Hanover National Bank v. Moyses, 186 U.S. 181, 189, 22 S.Ct. 857, 861, 46 L.Ed. 1113 (1902)). The Seventh Circuit held, therefore, that section 522(b) satisfies the uniformity requirement because the opt-out mechanism operates uniformly from state to state. See id. at 1133-36. Regarding the impermissible-delegation-of-congressional-power argument, the court held section 522(b)’s scheme to be constitutional because "states retain the power to enact bankruptcy laws so long as they do not conflict with federal bankruptcy legislation.” See id. at 1137 (citing Sturges v. Crowninshield, 17 U.S. (4 Wheat.) 122, 4 L.Ed. 529 (1819) (Marshall, C.J.)). But cf. In re Parrish, 19 B.R. 331, 335 (Bankr.D.Colo.1982) (suggesting that the supremacy clause will invalidate attempts to opt out if state exemptions depart so much from the federal exemptions in section 522(d) that the state exemptions frustrate congressional fresh-start policy); In re Vasko, 6 B.R. 317, 322 (Bankr.N.D.Ohio 1980) (same).

. "The word 'householder' as used in this title shall include any person, married or unmarried, who maintains a separate residence or living quarters, whether or not others are living with him.” Va.Code § 34-1 (1984).

.See Cheeseman, 656 F.2d at 62-63. The United States District Court for the Eastern District of Virginia, in a case that preceded Cheeseman, concluded that the homestead exemption is limited to one spouse per household. See In re Thompson, 4 B.R. 823 (E.D.Va.1980). The court observed that the definition of "householder,” see supra note 5, refers to one who “maintains a separate residence." See id. at 825. Because the traditional purpose of the homestead exemption has been to conserve the family household, furthermore, the court reasoned that only one exemption was intended for each residence. See id. at 825-26; see also Ulrich, Virginia’s Exemptions Statutes — The Need for Reform and a Proposed Revision, 37 Wash. & Lee L.Rev. 127, 153 n. 149 (1980) (“This possibility [that both spouses would be able to claim a homestead exemption] exists under the present definition of householder in § 34-1 only if the parents [i.e. spouses] maintained separate residences.”) (emphasis added).
In a recent decision, the United States Court of Appeals for the Ninth Circuit expressly rejected the reasoning of Cheeseman. See In re Granger, 754 F.2d 1490 (9th Cir.1985) (per curiam) [choosing instead to follow the approach of the United States Court of Appeals for the Eleventh Circuit in First National Bank of Mobile v. Norris, 701 F.2d 902 (11th Cir.1983), which had “upheld,” in the Ninth Circuit’s words, "Alabama laws that had an even less beneficial effect on debtors than the Virginia statute in Cheese-man"). The Ninth Circuit believed that the opinion in Cheeseman paid too little regard to the effect of the opt-out provision and, consequently, violated congressional deference to state exemption schemes. See id. at 1491-92. Section 522(m), the court concluded, could not require separate exemptions in a joint case if the state had elected to opt out. See id.
Some commentators have argued that Virginia’s definition of "householder” should be revised. See, e.g., Ulrich, supra, at 153 & n. 149; Comment, In re Cheeseman; A Judicial Revision of Virginia’s Homestead Exemption Laws, 16 U.Rich.L.Rev. 391, 402-04 (1982) (urging the Virginia legislature to validate the interpretation of "householder" in Cheeseman by having the definition apply to both spouses, even when they live in the same house). Despite the calls for revision, the Virginia legislature has seen fit to retain the present scheme. A revision with which the legislature did agree, however, was an increase in the amount of the exemption from $3,500 to $5,000, which it enacted in 1980. Act of March 17, 1980, ch. 167, 1980 Va.Acts 191 (codified at Va.Code § 34-13 (1984)).

. In 1984, Congress amended subsection 522(m) to read as follows: "Subject to the limitation in subsection (b), this section shall apply separately with respect to each debtor in a joint case.” The Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, § 522(m), 98 Stat. 353, 375 (1984). The "limitation in subsection (b),” also added by the 1984 amendments, prevents one spouse in a joint case from claiming one type of exemption scheme — state or federal — while the other spouse claims the alternative type of scheme. See id. § 522(b). These amendments do not affect the decision in Cheeseman because, of course, Virginia’s opt-out legislation gave the debtors no choice but to claim the state exemption scheme, which they did.

. Section 522(1) provides as follows:
The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section. If the debtor does not file such a list, a dependent of the debtor may file such a list, or may claim property as exempt from property of the estate on behalf of the debtor. Unless a party in interest objects, the *417 property claimed as exempt on such list is exempt.
11 U.S.C. § 522(1) (1982).

. The decisions allowing state law to limit debtors’ lien-avoidance powers, in spite of section 522(f)’s language and legislative history, have done so by relying on subtle definitions of state law. See Giles v. Credithrift of America, Inc. (In re Pine), 717 F.2d 281 (6th Cir.1983), cert. denied, 466 U.S. 928, 104 S.Ct. 1711, 80 L.Ed.2d 183 (1984); McManus v. Avco Financial Services of Louisiana, Inc. (Matter of McManus), 681 F.2d 353 (5th Cir.1982). These cases involved states that not only had opted out of the federal exemption provision, but also had, by the courts’ interpretation, enacted exemption definitions *418 that left out certain property encumbered by nonpossessory, nonpurchase-money security interests. The states, in effect, had opted out of section 522(f) in the way they defined exempt property because the lien-avoidance power depends on impairment of exempt property. If the debtor has no exempt property that could be impaired, according to the state definitions, then the debtor lacks the predicate for lien-avoidance power. Although the result in these cases probably is wrong, see infra note 10, the decisions are understandable in light of the confusion flowing from the existence of the opt-out clause in a scheme that otherwise restricts the application of state exemption law. See Haines, supra note 3, at 34-35; see also infra note 11.

. See note 10 on page [150].
*418 10. See In re Hall, 752 F.2d 582 (11th Cir.1985); McManus, 681 F.2d at 357-59 (Dyer, J., dissenting); Haines, supra note 3, at 25-35. The reasoning of Pine and McManus was rejected for allowing the states effectively to opt out of section 522(f), thus violating congressional intent and ignoring the supremacy of federal law. Hall, 752 F.2d at 586-87; McManus, 681 F.2d at 358 (Dyer, J., dissenting); Haines, supra note 3, at 27-29; see also L. King, K. Klee & R. Levin, Collier on Bankruptcy, ¶ 522.29, at ¶ 522.83 (15th ed. 1985) (“If a state opts out of the federal exemptions it does not affect the debtor’s power under subsection (f).”). But cf. infra note 11.

. Congress, on the one hand, articulated a policy protecting a debtor's fresh start by enabling him to avoid nonpossessory, nonpur-chase-money security interests in exempt necessities while, on the other hand, declared deference to state exemption statutes which could preclude operation of lien avoidance powers, by eliminating exemptions in the presence of liens. Congress utterly failed to recognize the problem.
Haines, supra note 3, at 30. Legislative history, moreover, fails to illuminate the interrelationship between section 522(f) and the opt-out clause. Id. at 30 n. 179.

. See generally Rendleman, supra note 3.

. Previously, legislation has been introduced as a response to recognized problems with section 522. Dubbed the Bankruptcy Improvement Act of 1981, this legislation not only would have eliminated the substantive federal exemptions in subsection (d), leaving only state exemptions to apply in bankruptcy, but also would have removed lien-avoidance powers regarding non-possessory, nonpurchase-money security interests. S. 2000, 97th Cong., 1st Sess. § 7(b), (c) (1981). Similar legislation introduced in the House also would have removed the lien-avoidance powers regarding nonpossessory, nonpur-chase-money security interests. H.R. 7294, 97th Cong., 2d Sess. § 305(b) (1982).
The appropriateness of such measures is arguable. The measures, in any event, may miss the point. Ensuring that bankrupts only can claim exemptions under state schemes would reflect greater deference to state law than is already shown with the opt-out mechanism, yet the effect of other subsections in section 522 still could undercut the effectiveness of the state schemes.
Removing lien-avoidance power regarding nonpossessory, nonpurchase-money security interests, on the other hand, would be more consistent with the deferential spirit of the opt-out provision and might therefore lead to a more coherent exemption scheme. As already shown, however, lien avoidance is not the only way that state exemption schemes can be distorted in bankruptcy proceedings. In the final analysis, Congress may be forced to rework the entire scheme of bankruptcy exemptions. Before doing so, it should consider what it is trying to accomplish by meshing state and federal law. Otherwise, it may contribute to the confusion over section 522 or, at the least, trade old problems for new ones.

. Biographia Literaria ch. 1 (1917).