In re Charles Howard PELTER and Jeannie Lee Pelter, Debtors.

Bankruptcy No. 85–1064–B.

United States Bankruptcy Court, W.D. Oklahoma.

Sept. 12, 1986.

---

Kay M. DeGroat and W. Rogers Abbott, II, Oklahoma City, Okl., for debtors.

J. David Ezzell, McKnight & Gasaway, P.C., Enid, Okl. for First Agricultural Credit Corp. of Enid.

Patricia M. Gerrity and Michael C. Turpen, Office of the Atty. Gen. of Okl., Oklahoma City, Okl. for the State of Oklahoma.

## MEMORANDUM DECISION AND ORDER ON MOTION TO AVOID LIEN

ROBERT L. BERRY, Bankruptcy Judge.

Debtors, Charles Howard Pelter and Jeannie Lee Pelter, have moved to avoid a non-purchase money, non-possessory security interest lien in certain agricultural equipment pursuant to 11 U.S.C. § 522(f)(2)(B) (1979) and also challenge the constitutionality of an Oklahoma Statute affecting a limit on the value of the claimed exemption. Okla.Stat. tit. 31, § 1.C. (Supp. 1986). The value of the equipment exceeds that limit. The holder of the security interest, The First Agricultural Credit Corporation of Enid, Inc. ("First"), has objected.

The Attorney General for the State of Oklahoma, in response to our certification under Fed.R.Civ.P. 24(a)(1) and 28 U.S.C. § 2403(b) has intervened on behalf of the State of Oklahoma. First has provided us with three *amicus curiae* briefs of the Oklahoma Bankers Association addressing the issue in a case pending before the Bankruptcy Court, Northern District of Oklahoma.

Debtors filed for chapter 11 bankruptcy protection in March, 1985. The case was converted to chapter 7 liquidation in July, 1985. A review of the Debtors' Statement of Affairs reveals that Debtors have been in the farming and ranching business since 1955. Debtors contend that farming and ranching is their trade and that the equip-

ment is used in that trade. This is uncontested.

Whether the agricultural equipment qualifies as exempt property under Okla.Stat. tit. 31, § 1.A.5. is not an issue in this case. Debtors assert a exemption claim which First does not contest. It is our understanding of *Central National Bank and Trust Co. of Enid v. Liming (In re Liming)*, 797 F.2d 895 (10th Cir.1986), *aff'g* 22 B.R. 740 (Bankr.W.D.Okla.1982), that the equipment is exempt under the Oklahoma statute.

Our decision today determines the constitutional validity of a state statute, Okla. Stat. tit. 31, § 1.C., which affects a limitation on the exemption of encumbered property for purposes of lien avoidance pursuant to 11 U.S.C. § 522(f).

Debtors contend that the state statute is an attempt to limit the power of the court to avoid a lien and therefore violates the Supremacy Clause of the U.S. Constitution. The State of Oklahoma, First, and the Oklahoma Bankers' Association (collectively referred to as "State") contend that the effect and intent of the statute is merely to set a value limit on a state exemption.

As each state ratified the Constitution of the United States they accepted the balance of powers it prescribes. The Constitution documents this balance. This balance not only involves the familiar "checks and balances" among the separate branches of the federal government but also the granting of specified powers to the federal government and retention of all other powers in the states. Each state granted the federal government authority to enact uniform laws of bankruptcy:

Section 8.[1] The Congress shall have Power

.    .    .    .    .

■ To establish ... uniform Laws on the subject of Bankruptcies throughout the United States

U.S. Const. art. I, § 8, cls. 1, 4 ("Bankruptcy Clause"); and the power to implement such laws:

Section 8.[1] The Congress shall have Power

.    .    .    .    .

■ To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof.

U.S. Const. art. I, § 8, cls. 1, 18.

Where Congress exercises its authority the resulting law is superior to the law of any state that touches the area. This principle is set forth in the Supremacy Clause:

■ This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any state to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2 ("Supremacy Clause").

■ The Supremacy Clause prevents a state from enacting bankruptcy legislation that conflicts with an area acted upon by Congress. Where both Congress and a state assert power in the same area the state legislation is suspended to the extent it frustrates or burdens the federal purpose. *Jones v. Roth Packing Co.*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977); *Texaco, Inc. v. Liberty National Bank & Trust Co. of Okla. City*, 464 F.2d 389 (10th Cir.1972); *In re George Rodman, Inc.*, 50 B.R. 313 (Bankr.W.D.Okla.1985).

■ Congress has exercised its authority in the area of property exemptions and lien avoidance. 11 U.S.C. § 522 (1979). Since Congress has acted all state legislation in these areas would be suspended but for a limited Congressional delegation of authority to the states allowing them to specify property that may be exempt within each state. 11 U.S.C. § 522(b) (1979). Such delegation is permissible, *Hanover National Bank v. Moyses*, 186 U.S. 181, 22 S.Ct. 857,

46 L.Ed. 1113 (1902), *Matter of Sullivan*, 680 F.2d 1131 (7th Cir.1982) and does not violate the constitutional mandate for uniformity contained in the Bankruptcy Clause. *Railway Labor Executives Ass'n. v. Gibbons*, 455 U.S. 457, 102 S.Ct. 1169, 71 L.Ed.2d 335 (1982), *reh'g denied* 456 U.S. 939, 102 S.Ct. 1997, 72 L.Ed.2d 459; *Stellwagon v. Clum*, 245 U.S. 605, 38 S.Ct. 215, 62 L.Ed.2d 507 (1917); *Hanover National Bank v. Moyses*, 186 U.S. 181, 22 S.Ct. 857, 46 L.Ed. 1113 (1902).

We must determine whether the state statute stands as an obstacle to the accomplishment of the purpose and objective of Congress. *Hines v. Davidowitz*, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941). In doing so we will resolve whether Okla.Stat. tit. 31, § 1.C. conflicts with the lien avoidance provisions of § 522(f). We follow a two step process in making this determination: First, we must ascertain the construction of the two statutes; Second, we must determine if the statutes conflict. *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971).

A review of how property rights are treated in bankruptcy is beneficial to an understanding of the construction of these statutes.

Prior to filing a petition in bankruptcy debtors are vested with legal and equitable interests in their property. Once the petition is filed essentially all of a debtor's property interests transfer to the estate. 11 U.S.C. § 541 (1984). Debtors are allowed to reclaim specified kinds and amounts of exempt property. 11 U.S.C. § 522(b) (1979). Congress specified the property that may be exempted. 11 U.S.C. § 522(d) (1979). Debtors reclaim exempt property subject to those liens that are valid in bankruptcy and creditors may enforce those liens against the property. 11 U.S.C. § 522(c)(2) (1984). Debtors may, however, avoid certain kinds of liens encumbering particular kinds of property to the extent the liens impair an exemption. 11 U.S.C. § 522(f) (1979).

The pertinent part of § 522(f) provides:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

.    .    .    .    .

(2) a non-possessory, non-purchase money security interest in any—

.    .    .    .    .

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor

. . .

11 U.S.C. § 522(f) (1979).

The effect of this part of § 522(f) is to grant debtors title to implements of their trade free of all non-possessory, non-purchase money security interests.

States may opt out of the federally provided exemptions. 11 U.S.C. § 522(b) (1979). A state choosing to opt out may either provide an exclusive list of exempt property or allow debtors to choose between the federal and state provisions. 11 U.S.C. § 522(b)(1) (1979). Oklahoma has chosen to opt out of the federal exemptions and to provide its own listing of exempt property applicable in bankruptcy. The Oklahoma statute provides:

B. No natural person residing in this state may exempt from the property of the estate in any bankruptcy proceeding the property specified in subsection (d) of Section 522 of the Bankruptcy Reform Act of 1978, Public Law 95–598, 11 U.S. C.A. 101 et seq., except as may otherwise be expressly permitted under this title or other statutes of this state.

Okla.Stat. tit. 31, § 1.B. (Supp.1986).

■■■ Thus, debtors who file bankruptcy in Oklahoma may claim only those exemptions allowed by state law.

Oklahoma provides an exemption which includes agricultural equipment. *Central National Bank and Trust Co. of Enid v. Liming (In re Liming)*, 797 F.2d 895 (10th Cir.1986), *aff'g* 22 B.R. 740 (B.R.W.D.Okla. 1982); *Davis v. Wright*, 194 Okla. 451, 152

P.2d 921 (1944); *Nelson v. Fightmaster,* 4 Okla. 38, 44 P. 213 (1896). That provision states:

A. Except as otherwise provided in this title and notwithstanding subsection B of this section, the following property shall be reserved to every person residing in the state, exempt from attachment or execution and every other species of forced sale for the payment of debts, except as herein provided:

. . . . . .

5. implements of husbandry necessary to farm the homestead ...

Okla.Stat. tit. 31, § 1.A.5. (Supp.1986)

Subsections A.5. and B., and § 522(f) would seem to allow debtors to avoid non-possessory, non-purchase money security interests in agricultural equipment used to farm the debtors' homestead. However, the Oklahoma Legislature also enacted legislation which limits the amount of the lien debtors may avoid. That provision states:

C. In no event shall any property under paragraph 5 or 6 of subsection A of this section, the total value of which exceeds Five Thousand Dollars ($5,000.00), of any person residing in this state be deemed exempt or otherwise exempt under the laws of this state for purposes of the lien avoidance powers provided to debtors under subsection (f) of § 522 of the Bankruptcy Reform Act of 1978, Public Law 95–598, 11 U.S.C. 101, et seq., or any successor, amendment or replacement thereof.

Okla.Stat. tit. 31, § 1.C. (Supp.1986).

This provision could be interpreted in either of two ways. The provision either limits the exemption of encumbered property to $5000 or places a $5000 limit on the power of the bankruptcy court to avoid liens pursuant to § 522(f).

State contends that the provision merely places a monetary limit on the exemption and is therefore within the state's authority.

In support of their proposition State cites *Cowan v. Cowan (In re Scott),* 12 B.R. 613 (Bankr.W.D.Okla.1981). That case in-

volved the attempted avoidance of a consensual lien on homestead property granted pursuant to a divorce decree. According to the decree plaintiff conveyed his interest in the property to the defendant simultaneously with defendants' granting of a lien on the property. Stating that Congress intended the avoidance powers under § 522(f) to affect only those liens that become fixed after the debtor acquires her interest in property we held that the lien was not avoidable. The lien involved was, because of the simultaneous, reciprocal grant of rights deemed to be in the nature of a purchase money lien. *Scott* is therefore distinguishable.

State cites decisions of other courts to support their position. According to those courts a state may define exempt property so that it does not include any property that is subject to a non-purchase money, non-possessory lien. By defining otherwise exempt property as nonexempt the provisions of § 522(f) can not be applied since § 522(f) only applies to exempt property. States are thus allowed to deny debtors the benefit of lien avoidance. *See Spears v. Thorp Credit, Inc. (In re Spears),* 744 F.2d 1225 (6th Cir.1984); *Allen v. Hale County State Bank (Matter of Allen),* 725 F.2d 290 (5th Cir.1984); *Giles v. Creditthrift of America, Inc. (In re Pine),* 717 F.2d 281 (6th Cir.1983); *McManus v. Avco Financial Services (Matter of McManus),* 681 F.2d 353 (5th Cir.1982); *In re Babcock,* 9 B.R. 475 (Bankr.W.D.La.1981).

The rationale followed by these courts is based in part on the assumption that § 522(f) is an exemption statute that may be modified by a state pursuant to the opt out provision of § 522(b). An understanding of the interaction of exemptions and avoidance powers is essential to an accurate application of these provisions.

Exemptions consist of specified types and amounts of property which have been determined by legislative bodies to be protected from execution, attachment, foreclosure, or other acts leading to surrender. In bankruptcy, the purpose of providing exemptions is to prevent debtors from be-

coming destitute and a charge on society by allowing debtors a minimal amount of property believed necessary to accomodate a "fresh start". *Central National Bank and Trust Co. of Enid v. Liming (In re Liming)*, 797 F.2d 895 (10th Cir.1986), *aff'g* 22 B.R. 740 (Bankr.W.D.Okla.1982).

Debtors' rights in exempt property may be voluntarily waived, however, and it has become routine for creditors to require debtors to waive these rights in order to obtain credit. This often results from unequal bargaining power and circumvents the purpose of the exemption provisions. *Hall v. Finance One of Georgia, Inc. (In re Hall)*, 752 F.2d 582 (11th Cir.1985). To provide the fresh start which is fundamental to bankruptcy, Congress provides debtors with the opportunity to undo some of these waivers so that the debtor is not left destitute. Thus, where certain property is exempt but the debtors have improvidently waived their exemption rights and the property involved is of the type described in § 522(f)(2), debtors may undo their waiver, that is, avoid the lien granted to the creditor, and thereby reclaim the property.

■ Exempt property is listed at § 522(d) or by state statutes. The power to avoid a lien on that property is found separately at § 522(f). While a state may opt out of federal exemptions there is no similar option under § 522(f). *Maddox v. Southern Discount Co. (In re Maddox)*, 713 F.2d 1526 (11th Cir.1983).

Judge Dyer, Circuit Judge of the Eleventh Circuit, explained the interaction, purpose and application of these provisions in his dissent to the *McManus* decision:

> If the majority opinion correctly states the law, any state can by statute preclude a debtor from availing himself of the loan [sic] avoidance provisions found in § 522(f). I cannot conclude that Congress intended to allow states to do this. [C]ongress intended that even if a state opts out of the federal exemptions, the debtor's lien avoidance power under subsection (f) is not thereby affected. And

under the supremacy clause, United States Constitution, art. VI, cl. 2, any conflict between the state lien conservation provision and the federal lien avoidance provision must be constitutionally resolved in favor of federal law....

Congress recognized that exemptions, whether state or federal in origin, are an essential feature of the system of financial rehabilitation afforded the hapless debtor in bankruptcy proceedings. Congress reasoned that since exemptions are so essential to this goal of rehabilitation they should be made available to the debtor regardless of whether or not state law would permit their waiver or surrender.

*McManus v. Avco Financial Services (Matter of McManus)*, 681 F.2d 353, 358 (5th Cir.1982) (Dyer, J., dissenting).

The understanding expressed by Judge Dyer is reflected in a number of decisions from other circuits which hold contra to the *McManus* line of cases. *Hall v. Finance One of Georgia, Inc. (In re Hall)*, 752 F.2d 582 (11th Cir.1985); *Maddox v. Southern Discount Company (In re Maddox)*, 713 F.2d 1526 (11th Cir.1983); *Associates Financial Services Co. of California, Inc. v. Dahdah (In re Dahdah)*, 20 B.R. 665 (Bankr.App. 9th Cir.1982); *In re Lawson*, 42 B.R. 206 (Bankr.E.D.Ky.1984); *In re Hill*, 4 B.R. 310 (Bankr.N.D.Ohio 1980).

The *Hall* court reviewed a Georgia statute that, like the Oklahoma statute permitted a debtor in bankruptcy to exempt property only if it is not encumbered by a lien.[1]

> This section [522(f)] operates to permit a debtor to avoid the fixing of a lien on property if that avoidance would allow the debtor to enjoy an exemption. The very purpose of the statute is to permit debtors to claim, as exempt, property completely or partially secured by an otherwise valid lien. To permit states to inhibit the operation of the lien avoidance provision simply by defining all lien encumbered property as "not exempt"

---

1. The Oklahoma statute is similar in that debtors may enjoy the exemption of agricultural

equipment with a value greater than $5000 only if it is not encumbered by a lien.

would render the statute useless, a result inconsistent with the well established principle of statutory construction requiring that all parts of an act be given effect, if at all possible.

.　　.　　.　　.　　.

We do not suggest that states are prohibited from defining lien encumbered property as not exempt. Any such decision would, however, be subject to the provisions of section 522(f). Thus, property encumbered by judicial liens and nonpossessory, nonpurchase money security interests could still be exempted notwithstanding the state's classification of lien-encumbered property as not exempt.

.　　.　　.　　.　　.

The import of the provision [522(b)] is merely that a state may decide to require that its debtors rely upon state defined exemptions, instead of the list of federal exemptions contained in section 522(d).

.　　.　　.　　.　　.

Although Congress may have undercut the purpose of the exemption scheme by permitting states to opt-out, we disagree that Congress' meant to allow unlimited state action on this matter. We hold, therefore, that the Georgia exemptions do not preclude the operation of section 522(f).

*Hall v. Finance One of Georgia, Inc. (In re Hall),* 752 F.2d 582, 586–588 (11th Cir. 1985).

■ We agree with the reasoning of the *Hall* court. We find that State's contention is supported by neither the language nor the application of Okla.Stat. tit. 31, § 1.C. This provision is clearly different in nature and application than a provision which merely limits the value of an exemption.[2] This provision is effective only "for purposes of the lien avoidance powers provided to debtors under subsection (f) of § 522 of the Bankruptcy Reform Act of 1978....". Okla.Stat. tit. 31, § 1.C. (Supp.

1986). This provision neither limits the value of debtors' exempt property in non-bankruptcy proceedings nor limits the value of exempt property once bankruptcy has been filed. Where debtors do not move to avoid a lien under § 522(f) they are entitled, under the Oklahoma statute, to exempt agricultural equipment of unlimited value. It is not until debtors ask the court to exercise its federal power to avoid a lien that they find Oklahoma has attempted to limit this power. As a result debtors retain less property than § 522(f) would otherwise provide. Thus, the Oklahoma statute is not an exemption statute but rather a statute designed to frustrate the Congressional purpose of § 522(f) and limit the exclusive power of the bankruptcy courts to avoid liens.

Congress provided the court with the power to avoid certain liens on specified property. Congress retains exclusive authority to determine the extent of the court's lien avoidance powers. Since Okla. Stat. tit. 31, § 1.C. works against Congressional purpose and intent and encroaches into an area where Congress has exercised its powers and since Congressional purpose, intent and authority must be supreme concerning legislation affecting bankruptcy, the provision must be suspended.

State has argued that if this statute is found unconstitutional and suspended agricultural credit may be severely limited. We are aware of the delicate economic situation facing both farming and banking in Oklahoma. Resolution of such political and policy predicaments are, however, best left to their source, the political and policy making bodies.

■ Three considerations are pertinent in determining whether our holding should be applied retroactively. They are, "first, whether the holding in question 'decid[ed] an issue of first impression whose resolution was not clearly foreshadowed' by earlier cases, ...; second, 'whether retrospec-

---

**2.** Compare Okla.Stat. tit. 31, § 1.C. with 31 Okla. Stat. tit. 31, § 1.A.12. which provides a limited exemption in a motor vehicle:

**12.** Such person's interest, not to exceed One Thousand Five Hundred Dollars ($1500.00) in value, in one motor vehicle ...

tive operation will further or retard [the] operation' of the holding in question, ...; and third, whether retroactive application 'could produce substantial inequitable results' in individual cases." *Northern Pipeline Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 87, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), quoting *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). Upon consideration of these factors we believe retroactive application inappropriate. We have not previously addressed this issue and the courts of appeals are divided. Retroactive application would do nothing to further the operation of our holding. Finally, a large number of debtors and creditors have relied on the Oklahoma statute. Inequities would result among them if this holding were applied retroactively. Therefore, our holding should apply only prospectively.

Accordingly, Okla.Stat. tit. 31, § 1.C. is suspended and the security interest lien held by First Agricultural Credit Corporation of Enid, Inc. is avoided in its entirety.